**UNITED STATES of America, Plaintiff,**

v.

**Sherman NICHOLS, Defendant.**

**No. 89 CR 1024–1.**

United States District Court,
N.D. Illinois, E.D.

June 14, 1990.

Daniel Murray, Joshua Buchman, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Sheldon Nagelberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Initially, in a one-count indictment, the government charged Sherman Nichols with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At trial before a jury, two police officers testified that they saw Nichols standing in front of an apartment building with the butt of a gun protruding from the waistband of his pants. When the officers approached Nichols, he turned and ran up the stairs. The officers testified that they chased him up the stairs where he ran into an apartment with an open door and slammed the door behind him. One officer broke down the door and testified that he found Nichols in the kitchen with his arm sticking through the burglar bars of a doorway and he heard a thud. The officers apprehended Nichols.

They further testified that they found a revolver on the back porch of the apartment and that they found on Nichols a waistpouch containing $605 in cash. At the first trial, the officers' proffered testimony that the pouch also had a plastic vial containing nine foil packets was excluded. Each foil packet consisted of a mixture containing cocaine. The total weight of the nine units of low purity cocaine was .83 grams. The officers testified that other persons were in the apartment that Nichols was found in; none of those persons testified at the trial. The officers testified that no one else saw them during the chase up the stairwell.

Nichols presented the testimony of the woman who lives across the hallway from the apartment Nichols was found in. She testified that she opened her door to see a policeman at the closed door across the hall and that he told her to get back into her apartment. She also testified that she heard the sound of persons being locked out of the apartment and then breaking the door down. She also testified she saw a person taken out of the entrance to the building and into a squadrol. Her testimony was somewhat inconsistent with that of the officers. The only other witness presented by Nichols was a private investigator who was a former FBI agent. She testified as to the limitations of the lighting in front of the apartment building. This testimony was offered on the issue of whether the officers could have seen a firearm in Nichols's waistband at nighttime. Defendant's theory of the case was that any gun found on the porch was not his.

The jury in this first trial could not reach a unanimous verdict and the court ultimately declared a mistrial. The foreperson reported in open court that the jury was split eleven to one in favor of finding Nichols guilty. A superseding indictment was brought which, in addition to charging possession of the firearm, charged possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and use of a firearm in drug trafficking in violation of 18 U.S.C. § 924(c).

At the second trial, the police officers' testimony was essentially unchanged except that they were also allowed to testify about the packets of cocaine found in the pouch. Expert testimony was also presented to verify it was cocaine. The woman across the hall testified again, but this time she testified the event with the police occurred in a year other than 1989 and her description of the person she saw arrested did not match the undisputed evidence. The private investigator did not testify at the second trial. Defendant argued that the gun was not his. The jury unanimously found Nichols guilty of all three charges.

The question of an appropriate sentence is now before the court. Since the offenses were committed in March 1989, the Sentencing Guidelines apply.

In 1975, while age 17, Nichols committed a residential burglary in violation of Illinois law. He pleaded guilty in 1976 and was sentenced to two years' felony probation. In 1980, Nichols committed a robbery in violation of Illinois law. He pleaded guilty in 1981, was sentenced to three years' imprisonment, and was imprisoned approximately 21 months before being paroled. In 1985, Nichols was found guilty of a 1984 auto theft that violated Illinois law. Nichols was sentenced to three years' imprisonment and was imprisoned approximately one year before being paroled. In 1987, Nichols was found guilty of a 1986 residential burglary in violation of Illinois law. He was sentenced to five years' imprisonment and imprisoned approximately 19 months before being paroled in January 1989. The present offenses were committed less than two months later while Nichols was still on parole.

As further explained in the presentence report, the probation officer has calculated the guideline range as 360 months to life. As required by 18 U.S.C. § 924(c), the man-

datory five-year sentence under that statute must be in addition to the sentence on the other two counts. Therefore, that offense is not part of the guidelines calculation. Unless the probation officer's calculation is incorrect or there is sufficient reason for departing from the guidelines, Nichols, who will be 32 in September, faces a minimum sentence of 35 years for possessing a gun while also possessing less than a gram of cocaine that he intended to distribute.

Section 2D1.1 of the Guidelines applies to determining the base offense level for Count One, the cocaine distribution charge.[1] The base offense level for distribution of less than 25 grams of cocaine (in this case it was less than one gram of a weak mixture) is 12. U.S.S.G. § 2D1.1(c)(16). Under U.S.S.G. § 2K2.1(a) (1988), the base offense level for Count Three, firearms possession, is 9. Because both counts involve the same act and transaction, they are grouped together and the offense level is 12.

Without consideration of the career offender guidelines, Nichols's criminal history category would be V based on three points each for three prior convictions,[2] two points for committing an offense while on parole, and one point for committing an offense less than two years after his release. The guideline range for an offense level of 12 and criminal history category of V is 27 to 33 months.

Nichols, however, falls into the category of career offender. See U.S.S.G. § 4B1.1. He was over eighteen years old when the present offenses were committed; the present offenses include a controlled substance offense; and he has two prior convictions for a crime of violence, the robbery and the second residential burglary.[3] If the possible life term on the firearm possession offense is the "offense statutory

---

1. Since the offenses occurred in March 1989, none of the November 1989 amendments to the Guidelines apply.

2. The 1975 burglary occurred while Nichols was a juvenile, Nichols was not sentenced to imprisonment for that offense, and the sentence was imposed more than five years prior to the present offenses. No points are added to the

criminal history category for that offense. *See* U.S.S.G. § 4A1.2(d).

3. Since not counted under U.S.S.G. Ch. 4, Pt. A, the 1975 burglary also does not count for purposes of determining if Nichols is a career offender. *See* U.S.S.G. § 4B1.2(3)(B).

maximum" to consider under § 4B1.1, then the offense level is 37. *See id.* § 4B1.1(A). If the maximum term on the distribution charge, which is 20 years (*see* 21 U.S.C. § 841(b)(1)(C)), is the "offense statutory maximum" to consider, then the offense level is 32. *See* U.S.S.G. § 4B1.1(C). A career offender's criminal history category is automatically VI. The guideline range for an offense level of 37 and a criminal history of VI is 360 months to life, which is what the probation officer calculated. The guideline range for an offense level of 32 and a criminal history of VI is 210 to 262 months.

■ In *United States v. Jackson*, 835 F.2d 1195, 1197–98 (7th Cir.), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988), the Seventh Circuit discussed, in *dictum*, the ambiguities contained in guideline § 4B1. First is the question of whether possession of a gun by a felon is a crime of violence. The Guidelines definition of a crime of violence that was in existence at the time Nichols committed his offense is applicable to this case. *See United States v. McNeal*, 900 F.2d 119 (7th Cir.1990); *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989). As of March 1989, the Guidelines incorporated the definition of crime of violence contained in 18 U.S.C. § 16 which is:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Under that statute, possession of a firearm by a felon is not a crime of violence. It is not an element of 18 U.S.C. § 922(g)(1) that the felon use, attempt to use, or threaten to use the firearm. Thus, § 16(a) does not apply. Section 16(b) also does not apply because there is no substantial risk, inherent in the nature of the crime, that

physical force will be used in the course of committing the offense of possession of a firearm. *United States v. Phillips*, 732 F.Supp. 255, 261–62 (D.Mass.1990) (applying identical statutory language contained in 18 U.S.C. § 3156(a)(4)). In making that assessment, the facts of the particular case before the court are not taken into consideration, only the inherent nature of the crime as statutorily defined. *Id.*

■ While under the statute the particular facts of the crime proven are not considered, the rule is not the same as incorporated into the Guidelines. This court is to follow the Application Notes of the Guidelines as well as the Guidelines themselves. *McNeal, supra.* As of March 1989, Application Note 1 to § 4B1.2 provided in pertinent part:

The Commission interprets [18 U.S.C. § 16] as follows: murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.

The Seventh Circuit recently interpreted this Application Note as meaning the particular facts of the offense committed may also be considered. *See McNeal, supra.*

■ In the present case, though, there is no evidence that Nichols made any attempt to use the firearm he possessed. Therefore his possession of firearm conviction is not a crime of violence.[4]

The other ambiguity of guideline 4B1 that *Jackson* refers to is the term "offense statutory maximum." If this refers only to a crime of violence or controlled substance

---

**4.** In making her calculation, the probation officer assumed that possession of a firearm was a crime of violence. She continues to maintain

that position even in light of the government's contrary concession.

offense, then the 20-year maximum for the cocaine distribution offense is the applicable maximum. If it refers to any crime for which the defendant is being sentenced, then the possible life sentence for the firearm possession is the applicable maximum. As of March 1989, the term "offense statutory maximum" remained unclarified. However, effective November 1, 1989, Application Note 2 to § 4B1.1 was added. That note clarifies that only the statutory maximum for the crime of violence or substance abuse offense should be considered. Since Application Note 2 is essentially a clarification, not an amendment, it should be considered in interpreting the guideline as applicable to offenses committed in March 1989. Also, an interpretation consistent with Application Note 2 would also be consistent with the rule of lenity that is applicable to these circumstances. The correct statutory maximum to apply is that for the distribution offense, which is 20 years. Nichols's offense level is therefore 32 and the guideline range is 210 to 262 months.[5]

This court had a recent case involving substantially similar circumstances. *See United States v. Garrett,* 712 F.Supp. 1327 (N.D.Ill.1989), *aff'd,* 903 F.2d 1105 (7th Cir. 1990). That case also involved convictions of a felon in possession of a firearm, distribution of cocaine,[6] and possession of a firearm during drug trafficking. Like this case, small amounts of cocaine were involved (in Garrett's case 19 grams of a mixture containing 3.5 grams of cocaine); no violence was involved in the particular incident from which the charges arose; and Garrett, like Nichols, had no history of any actual violence. The only difference of any materiality is that Nichols is about ten years younger than Garrett was at the time of sentencing. This would mean that

sentencing Nichols to the statutory minimums required for the firearms possession offense and using a firearm while trafficking offense would result in Nichols being released in his early fifties whereas Garrett is to remain imprisoned until his early sixties.[7] That is still an age at which crimes of violence are less likely.

■ There are two reasons for a downward departure in this case. One is that the Guidelines overstate Nichols's criminal history category. The other is that the Guidelines overstate the seriousness of Nichols's offense.

Guideline 4A1.3 provides in part:

There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category, and therefore consider a downward departure from the guidelines.

In considering a departure under this provision, the Commission intends that the court use as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable.

The Commentary to this guideline indicates that the criminal history categories are more likely to overstate the likelihood of recidivism for an older defendant than for a defendant in his or her early twenties.

As already stated, even if sentenced to the statutory minimums in this case, Nichols would not be out of prison until his

---

5. The day before the May 31, 1990 sentencing hearing, the government filed a memorandum in which it agrees with the conclusion that Nichols's firearms possession is not a crime of violence and that the 210-to-262-month range is correct. The government recommends imposing the 210-month minimum, but does not recommend any downward departure.

6. Unlike Nichols, Garrett had prior drug convictions and therefore could have been sentenced to up to 30 years on the distribution charge.

7. While this court is obliged to impose the sentences required by Congress, this court joins other courts in questioning whether prosecutorial discretion is being wisely and judiciously exercised in prosecuting many of the firearm possession charges that frequently are brought before the federal courts. *See, e.g., United States v. Morales,* 902 F.2d 604, 607 (7th Cir. 1990). *See also United States v. Dombrowksi,* 877 F.2d 520, 530-31 (7th Cir.1989).

early fifties. At that point, he is less likely to return to the crimes of burglary, robbery, and trafficking in drugs. *See Garrett*, 712 F.Supp. at 1335. Also, while the details of the past convictions are not known, the present drug offense involved only a minute quantity of diluted drugs and there is no evidence of any actual violence involved in any of the prior offenses. There is also no evidence that Nichols has been frequently involved in drug sales. Furthermore, the government did not initially intend to bring the drug charge that resulted in Nichols being classified as a career offender. It is appropriate in this case to consider Nichols as having a criminal history category of V.

It is also appropriate to make a downward departure as to the offense level. The offense levels contained in guideline 4B1.1 are guided by Congress's direction to assure that career offenders receive sentences at or near the maximum term authorized. *See* 28 U.S.C. § 994(h); U.S.S.G. § 4B1.1, comment (backg'd). Congress, however, would not have intended that somebody found guilty of intending to distribute less than one gram of diluted cocaine be sentenced at or near the maximum for intending to distribute nearly 500 grams of cocaine.[8] As previously stated, absent the career offender category, the offense level for the distribution charge is 12.[9] If 400 to less than 500 grams of cocaine had been involved, the offense level

would have been 24 (*see* U.S.S.G. § 2D1.1(c)(10)) and being in the career offender category still would have increased the offense level to only 32. Twenty-nine is the next lowest level for a career offender, applicable to those whose offense statutory maximum is 15 years or more, but less than 20 years. *See id.* § 4B1.1(D). A downward departure to at least 29 would be appropriate. Even if criminal history category VI is still used, the guideline range for an offense level of 29 is 151 to 188 months. If criminal history category V is used, the guideline range for an offense level of 29 is 140 to 175 months.[10]

As a practical matter, it is unnecessary to determine if an offense level below 29 is appropriate, since defendant must be sentenced to a statutory minimum of 180 months. However, in case of the possibility that there will be an effect in the future, a specific range will be identified. For an offense involving just under 500 grams, being a career offender increases the offense level by 8, i.e. from 24 to 32. If 500 grams is involved (a crime involving a potential sentence of up to 40 years, *see* 21 U.S.C. § 841(b)(1)(B)(ii)), being a career offender increases the range from 26 (U.S.S.G. § 2D1.1(c)(9)) to 34 (U.S.S.G. § 4B1.1(B)), also an increase of 8. Higher amounts of cocaine, however, generally result in a lesser increase in the offense level when being a career offender is considered. Nichols's lower level of 12, should be in-

---

**8.** Section 841(b)(1)(C) of Title 21 does not refer to an amount of cocaine. Section 841(b)(1)(B) of that Title, however, provides for heavier penalties if the amount of cocaine involved was 500 grams or more.

**9.** Even this offense level is based on possessing as much as just under 25 grams of cocaine. If defendant had had 30 times as much cocaine as he actually had, he still would have fallen into the same category of offense level.

**10.** It is noted that this is not a case in which the Guidelines fail to properly take into account the fact multiple enhancements are involved. Nichols's past offenses make him a career offender which, under the Guidelines, enhances the range for the drug offense. Even if there had been no firearms offense, the range, absent the departure, would be 210 to 262 months. The

additional five years for the § 924(c) offense is an enhancement based on possession of the firearm, not the past criminal history and is not considered under the Guidelines. Moreover, that statute expressly states that it should apply even if an offense is already enhanced by use of a deadly or dangerous weapon. If, however, the 360 months to life range had been found applicable based on possession of the firearm being a crime of violence used in determining the career offender offense level, then there might have been a double enhancement that the Guidelines do not adequately consider. Under that scenario, the past crimes would have enhanced the firearms possession to a possible life sentence and they would have been counted both to place Nichols in the career offender category and to place him at offense level 37 based on the potential life sentence.

creased by an amount more than 8, but not by 20 as the Guidelines provide. An offense level of 24 is appropriate. Using criminal history category V, the proper guideline range is 92 to 115 months.[11]

█ Nichols must be sentenced to at least fifteen years incarceration on the Count Three firearm possession which is a statutorily required minimum. He will be sentenced to a concurrent sentence on the distribution charge, Count One, and he must also be sentenced to a mandatory three years' supervised release on that charge. Sentencing for the offense of using a firearm during drug trafficking is a sentence determined independent of the Guidelines. That offense requires the imposition of a five-year sentence consecutive to the sentences on the other two counts. Contrary to defendant's argument at the sentencing hearing, that does not constitute an improper double enhancement. *See Garrett*, 903 F.2d at 1113–15. The minimum sentence that can be imposed is 240 months.

IT IS THEREFORE ORDERED that this court enters a finding that a downward departure from the Guidelines is applicable to Counts One and Three. The appropriate Guidelines sentencing range for those offenses is 92 to 115 months' imprisonment; however, a mandatory minimum of 180 plus 60 months must be imposed. A copy of this memorandum opinion shall be attached to and made part of the presentence report.

---

**11.** If criminal history category VI is used, the range is 100 to 125 months.