**UNITED STATES of America, Appellant,**

v.

**Kenneth SHOUPE, Appellee.**

**No. 90–5604.**

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1991.

Decided March 29, 1991.

James J. West, U.S. Atty. and Barbara Kosik Whitaker (argued), Asst. U.S. Atty., Scranton, Pa., for appellant.

Paul J. Walker (argued), Moscow, Pa., for appellee.

Before COWEN, ALITO and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

The United States appeals under 18 U.S.C. § 3742(b)(3) from a final sentence imposing a shorter term of imprisonment than the minimum set out in the applicable range of the Sentencing Guidelines. Because the factors upon which the district court relied in departing from the guideline range were adequately taken into consideration by the Sentencing Commission in formulating the relevant guidelines, we will vacate the sentence and remand for resentencing.

### I.

The defendant was indicted in January 1990 in the Middle District of Pennsylvania for six counts of distribution of cocaine and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The defendant pled guilty to one count as part of a plea agreement calling for dismissal of the remaining counts.

The defendant's presentence report concluded that he qualified for sentencing under the career offender provision of the Guidelines, Section 4B1.1. This section provides in pertinent part as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The term "prior felony conviction" is defined as a prior adult conviction for an offense punishable by death or imprisonment for a term exceeding one year. Section 4B1.2, Application Note 3. The term "crime of violence" is defined as any federal or state offense that is punishable by more than one year's imprisonment and that either contains "as an element the use,

attempted use, or threatened use of physical force against the person of another" or is among the offenses specifically listed, including "burglary of a dwelling." Section 4B1.2.

The defendant's presentence report revealed that he was 32 years old at the time of offense for which he was to be sentenced and that he had several prior adult felony convictions for crimes of violence or controlled substance offenses. First, he was convicted in the Dauphin County (Pennsylvania) Court of Common Pleas for burglarizing an apartment in Middletown, Pennsylvania; he committed this offense on June 5, 1975, at the age of 18 years, 8 months. He was sentenced to imprisonment for 11 to 23 months but was paroled immediately to authorities in Virginia to face pending charges. Second, he was convicted in the Portsmouth (Virginia) Circuit Court for the armed robbery of a pharmacy and was sentenced to ten years' confinement; he committed this offense on September 5, 1974, one day after his eighteenth birthday. Third, the defendant was convicted in 1985 in the Lackawanna County (Pennsylvania) Court of Common Pleas for delivery of a controlled substance and was sentenced to from two to four years' imprisonment; this offense occurred in April 1985, when the defendant was 28 years old. Finally, also in 1985, the defendant was convicted in the Lackawanna County Court of Common Pleas for delivery of a controlled substance and was sentenced to from two to four years' confinement to run concurrently with the previously mentioned drug sentence. The defendant committed this offense in September 1984, at age 28. Apparently because the last two offenses were consolidated for sentencing, the presentence report treated them as a single prior conviction.[1] Thus, for purposes of the career offender guideline, the presentence report disclosed three prior qualifying convictions, although the guideline required only two.

---

1. This treatment was prescribed by Section 4A1.2, which is "applicable to the counting of convictions" under Section 4B1.1. Section 4B1.2, Application Note 4. Under Section 4A1.-

2(a)(2), "related" sentences are treated as one sentence, and cases that are consolidated for sentencing are regarded as "related." Section 4A1.2, Application Note 3.

Based on these facts, the presentence report concluded that the defendant fell within the career offender provision of the Guidelines, Section 4B1.1. Under this provision, every career offender is given a criminal history category of VI. In addition, a career offender is given an enhanced offense level that is calculated based on the maximum statutory penalty for the offense on which he is being sentenced. In the defendant's case, the maximum statutory penalty was imprisonment for not more than 20 years (21 U.S.C. § 841(b)(1)(C)). Accordingly, the defendant was given an offense level of 32 (Section 4B1.1(C)). With a two-level reduction for acceptance of responsibility (Sections 3E1.-1, 4B1.1), the presentence report calculated the defendant's final offense level as 30. Based on this offense level and a criminal history category of VI, the presentence report reached a guideline imprisonment range of 168 to 210 months.

During the sentencing proceeding, the defendant's attorney requested a downward departure based on a variety of grounds. Defense counsel argued that the defendant's first two adult offenses "occurred when [he] was kind of a mixed up kid." Defense counsel also claimed that as soon as the defendant was arrested for the burglary in Dauphin County, Pennsylvania, he confessed to the prior robbery in Virginia, and defense counsel asserted that the Virginia robbery would not have been solved otherwise. In addition, defense counsel asserted that his client was a good father who regularly visited his child and paid child support.

The district court agreed with the accuracy of the calculation in the presentence report but granted a substantial downward departure. The court wrote:

Defense Counsel cited the defendant's youthfulness and immaturity at the time he committed prior offenses in 1974 and 1975 along with the short time span between the commission of the offenses and the defendant's cooperation with authorities. Defense Counsel also referred to the needs of the defendant's dependent child and his past efforts to support the child. Having considered the com-

ments of Defense Counsel and the totality of the defendant's background the court concludes that a strict application of the guidelines would be irrational.

The court therefore reduced the defendant's offense level by eight levels to level 22 and imposed a sentence of 84 months imprisonment, which represented the minimum sentence within the range for offense level 22 and criminal history Category VI (84 to 105 months).

II.

█ The Sentencing Reform Act requires a sentencing court to impose a sentence within the range prescribed by the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guideline that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "This provision is mandatory." *United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989). When we are required to determine whether a departure was based on a circumstance that was adequately considered by the Sentencing Commission, our scope of review is plenary. When we are required to determine whether a departure was based on incorrect factual findings, our standard of review is whether the findings were clearly erroneous. *See, e.g., United States v. Riviere*, 924 F.2d 1289, 1303 (3d Cir.1991); *United States v. Pharr*, 916 F.2d 129, 131 (3d Cir.1990); *United States v. Medeiros*, 884 F.2d 75, 78 (3d Cir.1989).

In the present case, the district court relied upon the following factors as grounds for departure: "the defendant's youthfulness and immaturity" at the time of his first two adult offenses, "the short time span between the commission of [those] offenses and the defendant's cooperation with authorities," and the defendant's responsibilities with respect to his child. All of these factors, however, were "adequately taken into consideration by the

Sentencing Commission in formulating" the career offender guideline.

■ A. *Age and Maturity.* The Sentencing Reform Act, 28 U.S.C. § 994, directed the Sentencing Commission to consider whether "age" should be considered in sentencing. The Commission subsequently issued a policy statement, Section 5H1.1, that unambiguously provides that "[a]ge is not ordinarily relevant in determining whether a sentence should be outside the guidelines."

Although this policy statement does not completely prohibit departures based upon age, it proscribes such departures except in extraordinary circumstances. In the present case, neither the district court nor defense counsel identified any extraordinary factor relating to the defendant's age at the time of the first two offenses. Certainly the bare fact that the defendant was 18 years old when he committed those crimes is not extraordinary. On the contrary, the commission of crimes of violence and drug offenses by 18–year olds is distressingly common.

Nor do we believe that the defendant is entitled to a departure simply because the Pennsylvania and Virginia courts might not have treated him as an adult offender had he committed those crimes a short time earlier, when he was still 17.[2] Cases involving youthful offenders that just qualify for adult treatment—and cases that just miss qualifying—are common. Simply because a case falls close to the line does not make it extraordinary. If we recognized a zone of extraordinary cases extending for some period of time after the statutory cut-off, we would undoubtedly be confronted with cases falling just beyond this zone and would then be required to decide whether these cases were also extraordinary. We decline to embark on this course.

For similar reasons, the defendant's asserted immaturity at the time of his first two offenses does not justify departure from the guideline range. If the sentencing judge did not simply use the term immaturity as a synonym for age, the court may have been relying upon defense counsel's claim that the defendant "was kind of a mixed up kid" at the time of these crimes. The quality of being "kind of ... mixed up," however, does not justify departure. *See* Section 5H1.3 ("Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provisions in Chapter Five.")

■ B. *Time Between Offenses and Cooperation.* The length of time between the armed robbery of a pharmacy in Portsmouth, Virginia, on September 5, 1974, and the burglary of an apartment in Middletown, Pennsylvania, nearly nine months later, on June 24, 1975, does not justify departure. The Sentencing Guidelines contain detailed rules regarding merger of offenses for purposes of calculating criminal history category and applying the career offender provision. *See* Section 4A1.2(a)(2) and Application Note 3; Section 4B1.2, Application Note 4. Under Section 4A1.2, Application Note 3, cases are generally merged if:

> They (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

By adopting this approach, the Commission implicitly rejected any rule that would merge the defendant's first two adult offenses simply because they were committed within the space of nine months. Moreover, even if those offenses were merged, the defendant would not escape the career offender guideline because he would still have two prior qualifying convictions.

■ Similarly, defense counsel's assertion that his client cooperated with the Pennsylvania and Virginia authorities did not justify departure. Under 18 U.S.C. § 3553(e) and Section 5K1.1 of the Guidelines, a sentencing court cannot depart

---

**2.** In both Pennsylvania and Virginia, offenders under 18 years of age were generally treated as juveniles but those over 14 in Pennsylvania and those over 15 in Virginia could be tried as adults in certain circumstances. Juvenile Act, Dec. 6, 1972, P.L. 1464, No. 333, §§ 2, 7, 28, 1972 Pa. Laws 1464; 1973 Va. Acts, ch. 440, § 1; 1974 Va. Acts, ch. 44, § 1.

downward based upon a defendant's cooperation unless the government makes a motion to permit such a departure, *see, United States v. Bruno*, 897 F.2d 691 (3d Cir. 1990). No such motion was made by the government in this matter.[3]

In the present case, there are no exceptional circumstances relating to any past cooperation by the defendant. It must be assumed that the sentences he received for his prior offenses reflected consideration of any cooperation he provided to the degree that the Pennsylvania and Virginia courts felt was appropriate. Departure is not justified simply because this method of taking cooperation into account does not remove his prior offenses from the scope of the career offender guidelines.

■ C. *Family Responsibilities.* The Sentencing Reform Act, 28 U.S.C. § 994(e), directs the Commission to "assure that the guidelines and policy statements ... reflect the general inappropriateness of considering the ... family ties and responsibilities ... of the defendant." The Commission, accordingly, has stated that "[f]amily ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines." Section 5H1.6 (policy statement).

In the present case, the defendant's presentence report revealed that he has a young son who resides with the defendant's former wife, that the defendant has paid regular child support, and that the defendant frequently spoke with the child by telephone. Defense counsel added at the sentencing hearing that his client is a good father and regularly visits with his son. These facts do not show such extraordinary family ties and responsibilities as to justify a departure despite Section 5H1.6.

### III.

Because the circumstances upon which the district court relied were adequately taken into account by the Sentencing Commission, the Sentencing Reform Act, 18 U.S.C. § 3553(b), prohibits departure on those grounds.[4] Therefore, we will vacate the sentence and remand for resentencing.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent. Although the majority's refusal to permit a downward departure from the strict career offender provision is understandable, I remain unconvinced that the sentencing judge's imposition on Shoupe of a sentence of over seven years for selling less than one-half ounce of cocaine was unduly lenient and prohibited by the sentencing guidelines.

The majority's decision requires Shoupe to serve a prison sentence of over fourteen years. The majority reaches its result because Shoupe, over fifteen years ago at the age of eighteen, was convicted of burglary and armed robbery and in 1984 was convicted of distributing one-eighth of an ounce of cocaine and one-seventh of an ounce of marijuana. This criminal history qualifies Shoupe for designation as a "career offender" under the guidelines. U.S.

---

**3.** Moreover, the career offender guideline already incorporates a considered decision by the Commission regarding the way in which cooperation for prior offenses generally should be taken into account. Under the career offender guideline, only those convictions resulting in prison sentences exceeding one year are counted. Sections 4B1.1, 4B1.2 and Application Note 3. If a defendant provided cooperation before sentencing for a prior offense, the sentence imposed for that offense presumably reflects consideration of that cooperation to whatever degree the sentencing court felt was appropriate. If the prior conviction resulted in a sentence of less than one year in light of cooperation, that prior conviction is not counted under the career offender guideline. Conversely, if the prior conviction resulted in a sentence exceeding one year despite cooperation, that prior conviction is counted. This scheme takes past cooperation into account, but it does not call upon a federal court applying the career offender guideline to perform the daunting task of making a new assessment of cooperation furnished in relation to past offenses. Because this scheme already takes past cooperation into account, departure based on past cooperation is generally not permissible. *But see* Section 4A1.3.

**4.** In light of the dissent's discussion of broader sentencing issues, we emphasize that we have decided only that the sentencing court erred in granting a downward departure based on the factors it identified: age and immaturity, the short time between offenses, cooperation, and family responsibilities.

S.G. § 4B1.1. Reading very little judicial discretion in this guideline section, the majority rejects each attempt made by the sentencing judge to justify a downward departure from the harsh dictate of Shoupe's career offender score.

The majority concludes that the reasons for departure cited by the sentencing court did not constitute a "mitigating circumstance" under this court's *general* approach to determining the permissibility of departures. The majority, however, does not discuss the *specific* grounds for downward departure contained in the Commission's policy statement in the applicable criminal history section of the guidelines. Recognition of the potentially harsh consequences arising out of blind adherence to the criminal history score and career offender definition apparently prompted the Commission to include additional grounds for downward departure from these provisions when the resulting score over-represents the seriousness of a defendant's criminal history. Thus, the Commission issued a policy statement declaring,

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category [ ], and therefore consider a downward departure from the guidelines.

U.S.S.G. § 4A1.3. This policy statement applies to those defendants who meet the criteria as "career offenders" under the criminal history section. *United States v. Lawrence*, 916 F.2d 553 (9th Cir.1990); *United States v. Brown*, 903 F.2d 540, 544 (8th Cir.1990) (Downward departure from career offender provision appropriate under U.S.S.G. § 4A1.3 "where the guidelines sentence overemphasizes the severity of the conduct or the defendant's criminal history").

The sentencing judge here, in effect, concluded that the career offender provision, which drastically increased Shoupe's prison sentence from two to fourteen years, over-represented the seriousness of Shoupe's criminal history. Shoupe sold cocaine on the streets by the gram. He was not, however, a manufacturer, importer, or major supplier of drugs. The Government viewed him as a "street level dealer." Presentence Report at ¶ 8. He did not carry a gun. . A straight application of the sentencing guidelines for this offense taking into consideration Shoupe's past criminal history but without reference to the career offender provision would have earned Shoupe a sentence of about two years imprisonment.[1] Indeed, other defendants sentenced with Shoupe, who, according to Shoupe's counsel played a more pivotal and active role in the drug trafficking, received sentences of approximately four years because they escaped the career offender status.

Shoupe barely fell within the letter of the career offender definition in two respects. The two earliest offenses counted for purposes of this provision, the burglary and robbery, occurred in quick succession when Shoupe was only 18 years old (the robbery coming *one day* after his eighteenth birthday) and nearly fifteen years prior to the instant drug offense. Thus, he barely made the *very margin* of the definition of "career offender" in the guideline. The sentencing judge also considered Shoupe's counsel's representation that he committed these earlier offenses when he was a mixed up kid having been raised by an abusive stepmother. In deciding to depart downward, the sentencing judge stated that there was a period of ten years during which Shoupe did not commit any offenses and also considered that Shoupe provided support for a young son. I believe that the sentencing judge did not err in concluding that Shoupe's sentencing score under the

---

1. Under guideline 2D1.1(a)(3), the offense level for his conviction for distributing 13.5 grams of cocaine was twelve (minus two points for acceptance of responsibility); Shoupe's past convictions landed him a criminal history score of twelve under guideline 4A1.1. Thus, a straight application of the sentencing guidelines, without reference to the career offender category, would have brought Shoupe a sentence of 21–27 months imprisonment.

career offender provision over-represented the seriousness of his criminal history and the instant offense.

The majority, however, applies the definition of "career offender" mechanically and rigidly, stating at typescript page 120:

> Simply because a case falls close to the line does not make it extraordinary. If we recognized a zone of extraordinary cases extending for some period of time after the statutory cut-off, we would undoubtedly be confronted with cases falling just beyond this zone and would then be required to decide whether these cases were also extraordinary.

The majority, thus, declines to deviate from an inflexible application of the letter of the career offender definition. Other courts, however, have read the provision more flexibly.

In *United States v. Lawrence*, 916 F.2d 553 (9th Cir.1990), the court permitted a downward departure for a defendant who met the definition of "career offender" from a sentence between 12.6 to 15.6 years to a sentence of 2.5 years, based in part on testimony from a psychiatrist that the defendant was not violent or antisocial and the likelihood of recidivism was low. The Government argued there that the obligatory language of the career offender statute required the court to apply its definition rigidly without regard to other provisions of the sentencing guidelines, including the criminal history provision. The court rejected the Government's position and declared that "the district court was entitled to rely on 'any ... policy statement [ ] or commentary in the guidelines that might warrant consideration in imposing sentence.'" *Id.* at 554, quoting U.S.S.G. § 1B1.1(i).

The court in *Lawrence* concluded that the Government read the sentencing statute, 28 U.S.C. § 994, out of context. The court asserted that "the statute as a whole gives many directions to the Commission to follow in formulating the guidelines, including 28 U.S.C. § 994(t) that '[t]he Commission ... *shall describe* what should be considered extraordinary and compelling reasons for sentence reduction.'" *Id.* at 555 (emphasis added). Thus, there is respectable authority and practical considerations supporting that mandatory language of the statute authorizing the career offender provision should not be read so as to negate other mandatory instructions elsewhere in the statute. The Application Instructions to the guidelines, U.S.S.G. § 1B1.1, require that the guidelines be read as a whole. Reading the literal, inflexible definition of "career offender" in isolation from the instructions to reduce a defendant's sentence where the criminal history score over-represents his crimes thus contravenes the interpretive approach mandated by the guidelines themselves.

Similarly, the court in *United States v. Brown*, 903 F.2d 540 (8th Cir.1990), reversed the sentencing court for rigidly adhering to the career offender provision because it believed itself so bound. Rejecting the absolutist position advanced by the Government, Chief Judge Lay held that departure from the career offender provision "may be appropriate where the guidelines sentence overemphasizes the severity of the conduct or the defendant's criminal history." *Id.* at 544.[2]

In contrast to the majority's belief that the boundaries of the career offender defi-

---

**2.** For other cases similarly permitting substantial downward departures from the career offender provision, *see United States v. Maddalena*, 893 F.2d 815 (6th Cir.1989) (holding that sentencing court had discretion to consider defendant's attempts to stay away from drugs in departing downward from career offender provision); *United States v. Brittman*, 750 F.Supp. 388 (E.D.Ark.1990) (granting defendant substantial downward departure because career offender provision over-represented the seriousness of his criminal history); *United States v. Nichols*, 740 F.Supp. 1332 (N.D.Ill.1990) (granting substantial downward departure from career offender provision because of the *age* of defendant, the *minute quantify of drugs* involved, and the *absence of violence* from any of the prior offenses); and *United States v. Garrett*, 712 F.Supp. 1327 (N.D.Ill.1989) *aff'd* 903 F.2d 1105 (7th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990) (granting substantial downward departure from career offender sentence of 35 years because the defendant was 42 years old and under such a long sentence would "die in prison").

nition offer no room for flexibility, courts also have sought to adjust the definition so as to classify a defendant as a "career offender" who fell just *outside* the letter of the provision. Thus, in *United States v. Gardner*, 905 F.2d 1432 (10th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990), the court authorized sentencing the defendant as a "career offender," even though the defendant just *failed* to meet the definition. The court noted that the defendant met the first two criteria of a career offender and just missed the fifteen-year cutoff for the third criteria. *Id.* at 1439. *See also, United States v. Medved*, 905 F.2d 935 (6th Cir. 1990) *cert. denied*, —— U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991). I can discern no principled reason for permitting sentencing judges to adjust the definition of "career offender" to impose a *harsher* sentence and refuse that discretion when the trial judge believes a more *lenient* sentence is just.

Other courts have affirmed substantial downward departures from the career offender provision where the departure was not opposed by the Government.[3] This transfer of discretion and control over sentencing from trial judges to government attorneys illustrates what one federal courts study committee referred to as the "perverse effect" of the sentencing guidelines. Federal Courts Study Committee Tentative Recommendations for Public Comment, December 22, 1989 at 62. One court has further quipped that "Congress has thus shifted discretion from persons who have demonstrated essential qualifications to the satisfaction of their peers, ... to persons who may be barely out of law school with scant life experience and whose common sense may be an unproven asset." *United States v. Boshell*, 728 F.Supp. 632, 637 (E.D.Wash.1990).

In light of other courts' willingness to depart from this provision, the majority offers no explanation why the court must be handcuffed to an iron-clad application of the "career offender" definition in this case, when a seasoned veteran of the trial court concluded to the contrary. In the instant case, Chief Judge Conaboy, the sentencing judge, has served as a United States district judge for over a decade, as a judge of a busy state trial court for seventeen years, and as past president of the Pennsylvania Conference of State Trial Judges. He obviously has had a great deal of judicial experience at the trial level; more experience with sentencing indeed than the government attorneys who urged the reversal of the district court's imposition of sentence.

One might believe that the majority's rigid adherence to the guideline definition of "career offender" will ensure that sentencing will be rid of irrational and unwarranted disparities. That is not necessarily true. For example, in a recent case, a defendant was convicted of *importing* 1,005 pounds of marijuana into the United States. *United States v. Delvecchio*, 920 F.2d 810 (11th Cir.1991). He had two prior convictions; one for importing 25,840 pounds of marijuana in May 1978 and another for importing approximately 30,000 pounds of marijuana in April 1980. Rigid application of the guidelines required that he *not* be sentenced as a "career offender" simply because the two prior convictions had been consolidated for sentencing. Shoupe, on the other hand, whose only drug convictions involved petty street dealing by the gram, qualifies for the drastic enhancements authorized by the career offender guideline. If the noble aims of the sentencing guidelines are to be achieved— to reduce irrational disparity and enhance

---

**3.** *See, e.g., United States v. Ybabez*, 919 F.2d 508 (8th Cir.1990) (Government permitted departure from 210–262 months down to 150 months and court affirmed); *United States v. Dean*, 908 F.2d 215 (7th Cir.1990) (Government permitted downward departure for "career offender" from sentence of 30 years-life to 6 years and court affirmed); *United States v. Gant*, 902 F.2d 570 (7th Cir.1990) (Government permitted downward departure for "career offender" from a

sentencing range of 210–262 months to 120 months and court affirmed); *United States v. Left Hand Bull*, 901 F.2d 647 (8th Cir.1990) (affirming departure from 51–63 months to 48 months); *United States v. Jones*, 898 F.2d 1461 (10th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990) (affirming departure from 210–240 months down to 156 months for "career offender's" cooperation with the government).

fairness in the sentencing process—then sentencing courts must be permitted to exercise some discretion to fine-tune the application of the guidelines to unique circumstances often presented in individual cases, especially where those cases fall close to the boundaries of a harsh provision like the career offender guideline. One can hardly expect that in today's complex society a mechanistic sentencing grid will adequately foresee the often extraordinary circumstances presented by the many thousands of criminal offenders that appear in our courts annually.

If the majority is correct as a legal matter, however, and sentencing judges must slavishly adhere to the harsh format of the career offender guideline, then I must anchor my dissent in a principle far more fundamental than a technical argument about how to apply the sentencing guidelines. In our system of criminal justice, neither Congress nor the Sentencing Commission nor the Guidelines themselves, nor the Government, nor this court has the authority to pronounce sentence upon a convicted defendant. The sentencing judge alone has such authority and consequently bears the agonizing *moral* burden of that decision. Can we, sitting separately and far removed from the center where punishment is meted out by and to flesh and blood, require that a sentencing judge impose a sentence which the judge conscientiously believes is fundamentally impractical, unsound, and unjust? If such a result is mandated by the career offender provision, I, like our esteemed colleague in the First Judicial Circuit, former Chief Judge Coffin, must "register my abiding concern with the career offender provision," which removes "all discretion from district judges in such cases [and] substantially alters our notion of just punishment, both in absolute terms and relative to that of other offenders." *United States v. Tony Allen Leavitt*, 925 F.2d 516 (1st Cir. 1991) (Coffin, J., concurring).

Accordingly, I would affirm the sentence imposed by the district court.