

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2004

# USA v. Rodriguez

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4451

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Rodriguez" (2004). *2004 Decisions*. Paper 386.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/386

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4451

UNITED STATES OF AMERICA,
Appellant

v.

CYNTHIA RODRIGUEZ

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 02-cr-00861)
District Judge:  Honorable Katharine S. Hayden

Argued July 12, 2004

Before:  RENDELL, FISHER and VAN ANTWERPEN, Circuit Judges.

(Filed: August 25, 2004)

George S. Leone
Ricardo Solano, Jr.     [ARGUED]
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102
  *Counsel for Appellant*

K. Anthony Thomas     [ARGUED]
Office of Federal Public Defender
972 Broad Street
Newark, NJ  07102
  *Counsel for Appellee*

RENDELL, <u>Circuit Judge</u>.

Cynthia Rodriguez was arrested at Newark International Airport when nearly three kilograms of heroin were discovered in suitcases she had brought into the United States from Panama. On November 18, 2002, she pleaded guilty to importation of heroin in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(A), a class A felony with a mandatory minimum sentence of ten years imprisonment. Under the United States Sentencing Guidelines, her sentencing range was 46 to 57 months, which includes adjustments for minor role and acceptance of responsibility. Ultimately, the District Court imposed a sentence of 13 months to be served at a Bureau of Prisons halfway house, after granting Rodriguez's motion for a downward departure based on her youth and her post-offense rehabilitation.[1]

The Government filed a timely appeal, arguing that the downward departure was erroneously granted and, in the alternative, that the extent of the departure was unreasonable. The District Court had jurisdiction based on 18 U.S.C. § 3231, and we have jurisdiction to consider the Government's appeal of the sentencing order pursuant to

---

[1]Because Rodriguez was eligible for the "safety valve" provisions under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a), the District Court was permitted to impose a sentence below the statutory minimum.

28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). We will vacate Rodriguez's sentence and remand for resentencing by the District Court, instructing the Court to impose a sentence that is within the applicable Guideline range.

## I.

As we write solely for the parties, we include only those facts that are relevant to the issues presented by this appeal. In April of 2002, Rodriguez ran away from her family's home in Florida and fled to New York to stay with Juan Carlos Rivera, a man she had met over the Internet. At the time, Rodriguez was eighteen years old. Her desire for independence apparently led her to flee from her parents, whom she saw as strict and overprotective. Soon after arriving in New York, Rodriguez learned that Rivera had sexual motivations for asking her to stay with him, and she moved out of his home. She began staying with another man named Roberto, whom she had met in New York. Knowing that she was unable to support herself, Roberto offered Rodriguez a chance to make $20,000 by traveling with him to Panama City and bringing back narcotics. Rodriguez agreed to participate in his plan.

While preparations were made for the trip and travel documents were obtained for those involved, Roberto and his associates kept watch over Rodriguez. In June of 2002, Rodriguez went to Panama City and remained there for approximately one month. The day before her return to the United States, she was given two suitcases that contained

drugs, concealed under false bottoms. She packed her belongings in the suitcases and flew back to Newark International Airport on June 30, 2002. She was arrested at the airport when the drugs were discovered during a routine Customs examination. She immediately admitted her guilt and cooperated with law enforcement officers by explaining her role in the scheme.

This was Rodriguez's first adult arrest, and she had no prior convictions. During the several months that she spent in pretrial detention, she took a preparatory course for the General Educational Development ("GED") test, volunteered as a bilingual interpreter, taught fellow inmates to read and write in English, and took religious courses. After she was released on bail, she expressed a desire to speak about her experience at her local high school. She also moved back in with her family, obtained a high school equivalency diploma and began taking cosmetology classes.

Rodriguez pleaded guilty, and was subsequently sentenced on October 20, 2003. After hearing statements from Rodriguez and her father, as well as argument by counsel, the United States District Court for the District of New Jersey granted her motion for a downward departure, finding that her youth and her post-offense rehabilitation were sufficiently extraordinary to warrant a reduced sentence. Rodriguez received what amounted to a ten-level departure, and was sentenced to 13 months imprisonment, followed by five years of supervised release. The District Court recommended that the term of imprisonment be served at a halfway house run by the Bureau of Prisons in

4

Florida, where Rodriguez would be able to continue taking her cosmetology classes.

In explaining its decision to depart, the District Court focused on Rodriguez's age, the improvement in her relationship with her family, her small role in the importation scheme, her lack of life experience, and a desire to avoid impeding Rodriguez's ongoing rehabilitation. Taken together, the District Court concluded that these considerations supported a departure, and that 13 months in a halfway house would be appropriate punishment for Rodriguez's offense. The Government filed this timely appeal.

II.

The Government challenges Rodriguez's downward departure, arguing that it was not justified by the facts of this case, and, in the alternative, that the extent of the departure was unreasonable. The recently-enacted PROTECT Act altered our standard of review in cases where the district court has granted a departure.[2] As we explained in United States v. Dickerson, No. 03-4450, slip op. at 14-15 (3d Cir. Aug. 24, 2004), the modified standard requires us to conduct a de novo review of the following issues: whether the departure advances the objectives set forth in § 3553(a)(2); whether the

_____

[2]This case was scheduled for oral argument on the same day as United States v. Dickerson, No. 03-4450 (3d Cir. Aug. 24, 2004), as the cases raised the same issue regarding the PROTECT Act and its applicability to cases in which appeals were pending when the Act went into effect, and the parties coordinated their discussions of this point in their briefs and before the court. We resolved the Ex Post Facto question in Dickerson, slip op. at 13, finding that no such violation occurs when we apply the new standard to pending cases. Thus, we will apply the de novo standard of review here.

departure is authorized under § 3553(b); and whether the departure is justified by the facts of the case. See 18 U.S.C. § 3742(e). If, based on those inquiries, we determine that a departure was warranted, we must then review the extent of the departure for abuse of discretion. Dickerson, slip op. at 15. Here, our analysis will focus on whether the departure was justified under the circumstances here, and if so, whether the extent was appropriate, as those are the only issues that are contested by the Government.

## III.

Rodriguez's motion for a downward departure was based on age, which is addressed by § 5H1.1 of the Guidelines, and post-offense rehabilitation, which we recognized as a permissible basis for a departure in United States v. Sally, 116 F.3d 76 (3d Cir. 1997).[3] She also sought a departure based on a combination of those two considerations, pursuant to § 5K2.0 of the Guidelines. However, as we will explain below, we are not convinced that either factor, considered alone or in combination, can support a departure on the facts of this case.

First, regarding the District Court's reliance on Rodriguez's youth, § 5H1.1 indicates that "[a]ge (including youth) is not ordinarily relevant in determining whether a

---

[3]The District Court mistakenly referred to § 5K2.19 as a basis for its consideration of post-offense rehabilitation. That particular provision of the Guidelines deals with post-sentencing rehabilitation, and is therefore inapplicable here. However, post-offense efforts, including those made following a defendant's arrest, are recognized as a departure factor in our court's decision in Sally.

sentence should be outside the applicable guideline range." The provision goes on to indicate that age is generally only a relevant consideration "when the defendant is elderly" and a term of imprisonment might be exceptionally problematic. Further, we have indicated that a defendant who is eighteen at the time of her offense is not rendered extraordinary by her youth alone. See United States v. Shoupe, 929 F.2d 116, 120 (3d Cir. 1991); see also Sally, 116 F.3d at 77-78. Rodriguez acknowledges this and contends that her case is exceptional based on a combination of her youth, her immaturity, her lack of family guidance at the time of the offense, her naivete, her role as a pawn in the importation scheme, and her impetuous nature.

We agree with the Government that many of the characteristics listed by Rodriguez are, in reality, synonyms for "youth," and there is nothing about Rodriguez or her offense that removes her situation from the heartland of cases involving comparable drug crimes.[4] In the context of a typical drug courier case, nothing about Rodriguez herself or the circumstances surrounding her offense renders this case exceptional. Unfortunately, it is not uncommon for eighteen-year-olds to commit narcotics-related offenses, and those wishing to import drugs using couriers in this fashion often seek young, naive men and women without extensive criminal experience. Thus, Rodriguez's youth alone is not extraordinary and does not warrant a downward departure here.

---

[4]Additionally, one factor that was heavily relied upon by both Rodriguez and the District Court – lack of guidance from her family at the time of the offense – is explicitly prohibited as a departure consideration under § 5H1.12 of the Guidelines.

7

Second, with respect to post-offense rehabilitation, such efforts can only form the basis for a departure where the defendant has shown a "real, positive behavioral change" and a "commitment to repair and rebuild" her life. United States v. Yeaman, 248 F.3d 223, 228 (3d Cir. 2001). Further, the defendant's efforts must be remarkable, rendering her case exceptional when compared to efforts made by defendants in typical cases, especially because ordinary post-offense rehabilitation is already accounted for by the adjustment for acceptance of responsibility under § 3E1.1 of the Guidelines. See Sally, 116 F.3d at 81 n.1. As noted, Rodriguez's efforts here included studying for and earning her GED, acting as an interpreter while in jail, tutoring fellow inmates in English, taking religious and cosmetology classes, and making amends with her family.

Again, we are compelled to agree with the Government that these efforts, while certainly commendable, are not extraordinary. We recognize that there has been a shift in Rodriguez's outlook on life and her attitude toward her family, and that she has made strides in improving herself during a relatively short period of time. However, a review of other cases involving post-offense rehabilitation convinces us that the circumstances here are not exceptional. See, e.g., Yeaman, 248 F.3d at 228-29 (concluding that efforts were not exceptional where the defendant learned Spanish, sang in prison choir, tutored other inmates, and was considered to be a model prisoner); United States v. Reyes, 152 F. Supp. 2d 806, 808 (E.D. Pa. 2001) (denying departure where defendant took educational courses and parenting workshops, and participated in a drug treatment program); cf.

8

<u>United States v. Bradstreet</u>, 207 F.3d 76, 78-79 (1st Cir. 2000) (granting a departure where the defendant tutored other inmates, developed a curriculum and taught adult continuing education classes, completed a boot camp program, assisted the prison chaplain, volunteered to help with the prison parenting program, and lectured at local colleges about business ethics).

We therefore conclude that Rodriguez's rehabilitative efforts alone were not sufficient to warrant a downward departure. Additionally, we do not think that a combination of her age and post-offense rehabilitation will support a departure. Neither factor alone renders her case extraordinary, nor do the two factors, when added together, remove her situation from the heartland of comparable cases. Rodriguez is relatively young, and she has made some commendable efforts at improving herself as a result of this offense, but she is not substantially distinguishable from many other criminal defendants who commit similar offenses. Thus, no departure from the Guideline range is warranted in her case.[5]

## IV.

Accordingly, we will vacate Rodriguez's sentence and remand for resentencing consistent with this opinion, at which time the District Court shall impose a sentence within the appropriate Guideline range of 46 to 57 months.

---

[5]Because we conclude that the departure was not justified on the facts of the case, we need not examine the extent of the departure that was granted.