**UNITED STATES of America, Plaintiff,**

v.

**Eric BRITTMAN, Defendant.**

**No. LR–CR–87–194.**

United States District Court, E.D. Arkansas, W.D.

June 29, 1990.

Robert L. Neighbors, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

Robert L. Adcock, Green Law Offices, Little Rock, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

This case was remanded by the Eighth Circuit for resentencing under the Sentencing Guidelines. Now before the Court are defendant's Motion and Amended Motion for Reconsideration of Sentence under Federal Rule of Criminal Procedure 35(b). In addition, the government has moved for a downward departure from the sentencing range pursuant to § 5K1.1 of the United States Commission, *Guidelines Manual,* (Nov. 1989).

## DISCUSSION

A. *Procedural History*

On May 27, 1988, upon motion of the defendant, the Court filed a memorandum opinion and an accompanying Order, 687 F.Supp. 1329, declaring the sentencing guidelines and the commission which created it unconstitutional. Specifically, the Court concluded that the new law resulted in an unconstitutional delegation of legislative powers; that it violated the separation-of-powers doctrine; and that it deprived the defendant of his liberty without due process of law.

Because the Court anticipated the possibility of a reversal of its Order, it adopted a

"two track" approach to Mr. Brittman's sentencing. Initially, sentence was imposed under the "old law" (i.e. as if the guidelines had not been enacted), but the Court also outlined the sentence the defendant could expect under the guidelines. Mr. Brittman was sentenced to a 10 year term of incarceration under the pre-guideline law and a special assessment of $50.00. The Court then explained that a sentence of 21 years of incarceration, three years of supervised release including restitution, and the special assessment, were dictated by the applicable provisions of the guidelines.

On appeal, the Court of Appeals for the Eighth Circuit reversed, 872 F.2d 827, citing the Supreme Court's decision in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), upholding the guidelines on separation-of-powers theory and holding, upon its own reasoning, that due process is not violated by the truncated discretion left to the district court under the guidelines. The mandate issued on June 19, 1989 directing this Court to impose the sentence required ·by the guidelines and the present motions followed in due course.

### B. *Defendant's Career Offender Status*

The dramatic difference between defendant's sentence under the pre-guideline approach and the more than doubled sentence seemingly compelled by the "career offender" section of the guidelines requires some explanation.[1] Section 4B1.1 states:

A defendant is a career offender if: (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is

greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

Mr. Brittman was 25 years old when convicted of the present offense. There is no question that the present offense involves a crime of violence. Nor is there any dispute regarding his second prior felony conviction under subsection (2) of 4B1.1. At the age of 19 he was convicted in state court for aggravated robbery, upon a guilty plea, and sentenced to ten years imprisonment. Mr. Brittman's first conviction however, poses serious problems for the Court in the context of the sentencing enhancement provision.

In 1979, at the age of 17, Mr. Brittman pled guilty to a charge of robbery and theft of property stemming from an incident of purse snatching. Although he had no prior record of juvenile convictions, he was sentenced, as an adult, to five years imprisonment (although he was later paroled). The presentence report prepared for the Court by the Probation office described this crime in one sentence: "On January 13, 1979, the defendant and two others struck the victim, knocked her against her vehicle and took her purse."

In its Memorandum Order of May 27, 1988 the Court considered:

[w]hy was the crime Mr. Brittman committed when he was seventeen years of age "a crime of violence"? Guideline 4B1.2 states, "the term 'crime of violence' as used in this provision is defined under 18 U.S.C. § 16." That section states:

(a) An offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another, or

(b) Any other offense that is a felony that, by its nature involves a substantial risk that physical force against a

---

**1.** Interestingly, this Court determined that if Mr. Brittman had been sentenced under the guidelines without reference to the recidivist "career offender" provision, the sentencing range would have been in the range of 110 to 137 months, or, approximately nine years and two months to 11 years and four months.

person or property of another may be used in the course of the offense.

So we see that not only has the Congress given the Commission the power to define conduct and attached penalties thereto, but the Commission, in turn, has delegated the definition of this "federal offense" to the state. This is because (as we are told by the Sentencing Commission) we must look to state law to determine if an element of the Arkansas crimes of "robbery and theft of property" is the "use, attempted use, or threatened use of physical force against the person or property of another." Section 5-12-102, of the Arkansas Code, 1987 Annotated, states:

> A person commits robbery if, with the purpose of committing a theft ... he employs or threatens to immediately employ physical force upon another.

So snatching a purse under the circumstances reflected by the presentence report would be a "robbery," under Arkansas law, which has as an element "the use or threatened use of physical force against a person." And as was pointed out above, Mr. Brittman is in no different position than he would have been had that "crime of violence" been murder. This actual example surely epitomizes the happenstantial nature and idiosyncratic effect of these mandatory rules, euphemistically called "guidelines." It is inevitable that such mandatory limits upon judicial discretion will result in such absurd consequences. Nothing could better illuminate the due process argument being presented here.

It is the randomness of circumstances that is so very troubling to the Court. Had the prosecutor elected to try Mr. Brittman as a juvenile, or, had he been allowed him to plead to the lessor included misdemeanor offense of theft instead of the felony, had he been sentenced as a first offender to community service, or to probation, or even

to only one year and one month of imprisonment, he would not now be facing a 21 year sentence.[2]

Indirectly, in the Eighth Circuit's opinion in *Brittman supra*, and with particularity in the recent case of *United States v. Green*, 902 F.2d 1311, 1312 (8th Cir.1990), due process challenges to the application of the career offender provision have been declared meritless. Recent caselaw, however, suggests the propriety of review of the applicable state statute against the specific underlying facts for the purpose of determining whether, in fact, the offense sought to be counted as a prior "crime of violence" felony.

In *United States v. Baskin*, a case similar to our own, the Court of Appeals for the District of Columbia addressed this point squarely:

> A sentencing judge retains discretion to examine the facts of a predicate crime to determine whether it was a crime of violence notwithstanding the Commentary to the guidelines' predetermined list of crimes which it considers to be crimes of violence. Obviously the guidelines' definitions, commentary and the like provide a solid starting point for determining whether a prior conviction was in fact a crime of violence. However, it may be appropriate, as provided by the guidelines, for a district judge to depart from the guidelines' statutory definition [or, arguably, the definition of a state statute] of a particular crime depending on the facts of the case.

886 F.2d 383, 389-90 (D.C.Cir.1989), *cert. denied*, ⸺ U.S. ⸺, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990). *See also United States v. Taylor*, ⸺ U.S. ⸺, ⸺ ⸻ ⸺, 110 S.Ct. 2143, 2152-2158, 109 L.Ed.2d 607 (1990); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990); *United States v. Williams*, 892 F.2d 296 (3rd Cir.1989).

> [F]or offenses committed prior to age eighteen, only those that resulted in *adult* sentences of imprisonment *exceeding* one year and one month ... are counted.
> Emphasis added.

**2.** Application Note 4 under 4A1.1 incorporates the provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History). Application Note 7 under § 4A1.2, entitled "Offenses Committed Prior to Age Eighteen," specifies that:

The factual circumstances surrounding the purse snatching conviction do not seem to justify the characterization of the event as a typical violent crime.[3] The Court will refrain, however, from engaging in a process of "second guessing" the charging decision for purposes of avoiding the application of the career offender provision. Instead the Court will exercise the limited discretion its possesses under the guidelines and depart downward from the applicable criminal history category and offense level.

### C. *Grounds for Downward Departures*

In the general introduction to the guidelines the Commission explained its position on several issues of sentencing philosophy. The Commission had this to say about departures:

> The new sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission ..." 18 U.S.C. § 3553(b). Thus, in principle, the Commission, by specifying that it had adequately considered a particular factor, could prevent a court from using it as a grounds for departure. *In this initial set of guidelines, however, the Commission does not so limit the courts' departure powers.* The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.... *With those specific exceptions [supplied], however, the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.*

U.S.S.G., Ch. 1, Part A, Introduction 4(b) (emphasis added). *See also* Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 45–50 (1988).

In a Policy Statement accompanying § 4A1.2, *supra,* addressing the appropriateness of departures based on criminal history the Commission stated:

> There may be cases where the court concludes that a defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes ... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category, and therefore consider a downward departure from the guidelines.

> \*　　\*　　\*　　\*　　\*　　\*

> This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur.

U.S.S.G. § 4A1.3 & Comment.

Last month the Eighth Circuit construed this policy statement and comment to apply to departures from § 4B1.1, the career offender provision in question. In *United States v. Brown, supra,* the Court of Appeals held that a sentencing court may independently evaluate the appropriateness of the enhanced sentence and depart downward in certain cases. In *Brown,* the 20 year old offender had two prior drug related convictions and qualified as a career offender. The district judge found that an enhanced sentence violated principles of proportionate sentencing due to the defendant's youth and the short sentences meted

---

**3.** Application Note 2 under § 4B1.2 provides examples as follows:
"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, arson, extortion, extortionate extension of credit, and burglary of a dwelling.
The Court notes the exclusion of simple assault.

out to his co-defendants.[4] He felt himself bound however, to impose the sentence:

In this case, the guidelines require the court to send a twenty-year-old man to prison for over seventeen years. The court does not take this responsibility lightly but realizes that Congress and the Sentencing Commission have spoken emphatically on this subject.

*United States v. Brown*, Statement of Reasons for Imposing Sentence, No. 3–89–002(03) (June 30, 1989). Holding the provision entitled "Adequacy of Criminal History Category," § 4A1.3, applicable to the evaluation of criminal histories of career offenders, the Court remanded for consideration "as to whether departure is appropriate." *Brown*, at 9.

In its amended motion for downward departure under § 5K1.1, the government recommends that the Court impose a sentence within the range called for by a calculation of the defendant's criminal history in the absence of the career offender provision. Section 5K1.1, "Substantial Assistance to Authorities," (Policy Statement) reads in pertinent part:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) The Court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(3) The nature and extent of the defendant's assistance;

(5) The timeliness of the defendant's assistance.

AUSA Bumpers reported: "[d]efendant Brittman was a critical witness in the pros-

ecution of Frederick Lee Jackson, without whose testimony a conviction [ ] would likely have been impossible." Motion for Downward Departure, at 1. Mr. Brittman was incarcerated one year when he testified. The specific recommendation by the government is for an adjusted offense level of 28 which, under the appropriate history category, IV, would result in Mr. Brittman receiving a sentencing in the range of 110 to 137 months.

On the basis of the Court's own estimation of the severity of sentence resulting from the application of the career offender provision and the motion by the government the Court is satisfied that two appropriate and valid grounds for departure exist and that they should be acted upon in Mr. Brittman's case. The remaining question is the extent of the downward departure and how the Court should conform its decision to principled notions of proportionality.

### D. *Proportionality in Departure*

1. The Court's Discretion to Depart Downward.

Where the district court engages in a process of statutory interpretation of the guidelines, its decisions are subject to plenary review. *United States v. Bishop*, 894 F.2d 981, 984–85 (8th Cir.1990). The mitigating grounds for departure in this case have already been considered by the Commission and have been clearly identified as grounds for departure. Once identified and found, in the case at bar, to warrant a departure, broad deference to the sentencer will be given.

The Eighth Circuit has advanced a line of cases which indicate that the extent of a departure is within the Court's discretion and is non-reviewable. The Court of Appeals summarized its position thusly:

We recently held to be non-reviewable claims that a district court "abused its discretion in failing to depart downward for certain circumstances not adequately

---

**4.** Brown was sentenced to 17 years under § 4B1.1, while his co-defendants received sentences of 24 and 27 months.

taken into consideration by the Sentencing Guidelines." *United States v. Evidente*, 894 F.2d 1000, 1003 (8th Cir.1990).

\* \* \* \* \* \*

Here, the district court decided to depart downward from the Guidelines. The government has not cross-appealed or contested this determination, and [defendant] cannot appeal that decision. Instead, his argument challenges only the extent of the departure. If, as we held in *Evidente*, we may not review the question whether the district court abused its discretion in refusing to depart, *certainly we may not review the extent of the departure.*

*United States v. Bull*, 901 F.2d 647, 650 (8th Cir.1990) (emphasis added). *See United States v. Pighetti*, 898 F.2d 3 (1st Cir. 1990); *United States v. Wright*, 895 F.2d 718, 719–22 (11th Cir.1990) (per curiam); *see also United States v. Erves*, 880 F.2d 376, 381–82 (11th Cir.), *cert. denied sub nom.* — U.S. —, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989).

2. Principled Departure.

The guidelines refer to several kinds of departures, including:

> instances in which the guidelines provide specific guidance for departure, by analogy or by other numerical or non-numerical suggestions.... The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions, and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.

\* \* \* \* \* \*

[Another] kind of departure will remain *unguided*. It may rest upon grounds referred to in Chapter 5 [Part K (Departures)], or on grounds not mentioned in the guidelines. While Chapter 5, [Part K] lists factors that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly unusual.

U.S.S.G. Ch. 1, Pt. A, Introduction 4(b). We deal here with two grounds for departure contained in Chapter 5: an inadequate criminal history category and an instance of substantial assistance provided to the authorities. The Court's discretion while "unguided" either numerically or otherwise cannot be unprincipled. We turn to sources of proportional departures.

Not surprisingly, the lion's share of cases considering theories of departure do so in the context of upward departures. Notions of proportionality by definition extend to downward departures as equally as to upward enhancements. At the same time, there can be no hard and fast rules on departures, for again, by definition, if departing formulae could be constructed they would simply have been introduced into the guidelines.

Rather, amounts of departure must be evaluated in light of the practical experience of the trial judge (no matter how anachronistic such a process may seem!) but ought to make analogy to the mechanics and philosophy of sentencing reflected in the guidelines themselves. *See e.g. United States v. Pearson*, 900 F.2d 1357, 1362 (9th Cir.1990). As Judge Easterbrook put it: "A judge may not say: 'I have decided to depart, so I now throw away the guidelines.'" *United States v. Ferra*, 900 F.2d 1057, 1058 (7th Cir.1990).

In practical terms departures by analogy to the guidelines may involve several distinct approaches. A judge may simply move in vertical increments to reflect the relative seriousness of the offense, and in horizontal increments to reflect the relative seriousness of the criminal history. The Court terms this the "matrix approach." *See e.g. Ferra, supra; United States v. Kim*, 896 F.2d 678, 684–86 (2d Cir.1990).

The guidelines suggest such an approach concerning departures based on unrepresentative criminal history categories: "[i]n considering departures under this provision, the Commission intends that the court

use, as a reference, the guideline range of a defendant with a higher or lower criminal history category, as applicable. One Seventh Circuit opinion suggests movements of 10–15%, the amount of each increment across or down the sentencing table. *United States v. Schmude,* 901 F.2d 555, 559 (7th Cir.1990).

The Circuits have dealt with departures that do not lend themselves neatly to the matrix analogy approach. In these cases, reference is still to the guidelines but aggravating circumstances are computed as separate crimes for enhancement purposes. *See United States v. Lopez–Escobar,* 884 F.2d 170, 173 (5th Cir.1989) (mere fact that a departure more than doubles the maximum guideline sentence is of no independent significance, finding departure from 2 to 5 years reasonable based on large number of illegal aliens transported); *United States v. Rodriguez,* 882 F.2d 1059, 1067–68 (6th Cir.1989) (departure from 37 to 72 months reasonable where court articulated several grounds for departure, one of which related to criminal history level), *cert. denied,* — U.S. —, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *United States v. Diaz–Villafane,* 874 F.2d 43, 50–52 (1st Cir.) (departure more than tripling maximum sentence from 33 to 120 months not "outside of the universe of acceptable punishments" where court articulated five separate grounds for departure), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Salazar–Villarreal,* 872 F.2d 121, 122–23 (5th Cir.1989) (upward departure from maximum 10 month guideline to 36 months reasonable, based on death and injury resulting from crime); *United States v. Roberson,* 872 F.2d 597, 602–03 (5th Cir.) (departure from maximum of 37 months to 120 months reasonable where defendant's conduct was "extreme"), *cert. denied,* — U.S. —, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

In Mr. Brittman's case the Court will adopt the latter approach and depart in two steps corresponding to the two applicable grounds for departure. First, the Court finds that the career offender provision "significantly over-represents the seriousness of a defendant's criminal history" and it will be disregarded. The defendant will therefore be sentenced under criminal history category IV based upon a calculation of his prior conviction as outlined in the Order of May 27, 1988. Second the Court will begin with an offense level of 28 which is a straight application of the guidelines to this case and which results in a sentencing range of 110–137 months. Taking into consideration the motion and amended recommendation of the government the Court will reduce Mr. Brittman's offense level by a departure of two levels to 26 with a corresponding range of 92–115 months. Since the Court felt that the just and appropriate sentence for Mr. Brittman's crime under the "pre-guideline" law (with its attendant parole provisions) would be 10 years, it will fix Mr. Brittman's sentence at 92 months, i.e. the lowest sentence in the permitted range.

This sentence will still require more "jail time" than Mr. Brittman would probably have served under the pre-guideline sentence, but it is the closest sentence permitted under the guidelines to the one the Court feels would be most just and appropriate.

Defendants' motions are mooted as a result of the Court's downward departure.

IT IS THEREFORE ORDERED that the Motion for Downward Departure by the United States be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that the defendant be, and he is hereby, sentenced to a term of 92 months of imprisonment, three years of supervised release, and is ordered to pay a special assessment of $50.00. This sentence is deemed to have been entered and imposed on the 27th day of May, 1988.

IT IS FURTHER ORDERED that defendants' Motions for Reconsideration of Sentence be, and they are hereby, dismissed as moot.