**UNITED STATES of America,**

v.

**Mark TAYLOR.**

**Crim. No. 92–228.**

United States District Court, W.D. Pennsylvania.

Aug. 4, 1993.

Joseph M. Yablonski, Asst. U.S. Atty., Pittsburgh, PA, for plaintiff.

Bruce A. Antkowiak, Greensburg, PA, for defendant.

## OPINION

DIAMOND, Chief Judge.

The court is confronted with the difficulty of sentencing a defendant whose case presents an atypical situation under the United States Sentencing Guidelines which were designed to create a "heartland" of presumptive sentences for typical cases. The defendant pled guilty to one count of distribution of less than 100 grams of heroin within 1,000 feet of a school, in violation of 21 U.S.C. § 845a

(1990). The presentence report concluded that defendant is a career offender under the Sentencing Guidelines and calculated his sentence accordingly. Defendant strenuously argues that he is not a career offender as a matter of law. The defendant further argues that if the court should find that his criminal history falls within the linguistic definition of a career offender, the facts and circumstances of this case justify a significant departure under either U.S.S.G. § 4A1.3 or U.S.S.G. § 5K2.0. The defendant's arguments and the court's determination as to an appropriate sentence necessitate the following opinion.

The defendant sold heroin to an undercover agent on three separate occasions during May and June of 1990. The total amount of heroin sold by defendant was .437 grams. Of this, .06 of a gram was sold within 1,000 feet of a school. The defendant also distributed .03 of a gram of cocaine. The total amount of money involved in the transactions was $100.00. On two occasions the defendant personally sold drugs he possessed to the undercover agent and on one of these occasions he solicited the agent. On the third occasion, the defendant acquired the drugs from a co-defendant.[1]

The defendant recently pled guilty to state charges of possession of cocaine and heroin and possession with intent to deliver. These state charges involved substantially similar conduct from roughly the same time period. In July of 1989, and July of 1990, defendant was observed by Pittsburgh narcotics detectives on a street corner that was associated with drug trafficking. On both occasions the detectives' observations gave way to a chase which resulted in the defendant discarding packets of a small amount of narcotics. The state prosecutions concerned only these two transactions and did not include the three formal sales defendant made to an undercover detective in May and June of 1990. At the time of the instant indictment, defendant was serving a 2 to 5 year sentence on these state charges. The state sentence was imposed on

September 18, 1991. Defendant has been incarcerated since July 1991.

## I.

At paragraph 23 of the presentence investigation report, the probation office concludes that defendant is a career offender pursuant to U.S.S.G. § 4B1.1. Defendant strenuously argues that he is not a career offender as a matter of law. Section 4B1.1 of the United States Sentencing Guidelines provides that a defendant is a career offender if (1) the defendant was at least 18 years old at the time of the instant offense, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two felony convictions of either a crime of violence or a controlled substance offense. The defendant concedes that the first two elements of § 4B1.1 are met. Thus, the inquiry turns on whether defendant has two prior felony convictions for either a crime of violence or a controlled substance offense.

■ In the addendum to the presentence report, the probation office concludes that defendant's recent state-prosecuted drug violations cannot serve as a basis for career offender treatment. We agree. The offenses in the instant indictment were committed before the April 4, 1991, guilty plea entered in state court. Accordingly, the defendant had not yet sustained a conviction for these charges at the time he committed the instant offense. Therefore, the April 4, 1991, state court conviction is outside the potential calculation of career offender status. *See* U.S.S.G. § 4B1.2(3).

■ Defendant's career offender status is based upon an analysis of the burglary convictions he sustained as a teenager in 1979 and 1980. In October of 1979, the defendant pled guilty to burglary, theft and receiving stolen property. Two separate charges were filed. In one, defendant was charged with stealing a tape recorder from an apartment. In the other, the defendant burglarized an apartment and stole three rugs valued at

---

1. Both the defendant and his co-defendant were indicted for this transaction. The co-defendant also was indicted for other transactions involving the sales of controlled substances. The co-defen-

dant pled guilty to the same offense of conviction for which the defendant is to be sentenced and received a guideline sentence range of 12 to 18 months.

$110.00; Counts Four, Five and Six charged that defendant burglarized another apartment and stole items valued at $810.00; and, Counts Seven and Eight charged that defendant stole a trumpet belonging to the Pittsburgh Public Schools. The judge originally imposed a sentence of two years probation for the two separate indictments.

On June 17, 1980, while defendant was on probation, he was again arrested on charges of burglary, theft and receiving stolen property. While on probation, the defendant had entered a house and had stolen an audio system and television set. Because defendant was on probation at the time, the defendant appeared before the original sentencing judge, probation was revoked and he was sentenced to 9 to 23 months for the probation violation. On February 10, 1981, a sentence of 9 to 23 months was also imposed for the new criminal conviction. The subsequent judge's sentence of 9 to 23 months imposed for the 1980 burglary was concurrent with the sentence for the probation violation.

Defendant argues that all of these burglary convictions should be counted as one sentence because they were "related" cases within the meaning of § 4A1.2(a)(2). The defendant contends that the *ex post facto* clause of the Constitution requires this court to apply Application Note 3 to U.S.S.G. § 4A1.2 as it existed at the time of the commission of the instant offense, June, 1990. The 1990 Sentencing Guidelines provided at Application Note 3:

> Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

The current 1992 version of the Guidelines provides at Application Note 3:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).

Otherwise, prior sentences are considered related if they result from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Defendant argues that as applied to him, the current provision providing that prior sentences are not considered related if they were for offenses that were separated by an intervening arrest is an increase in punishment which is barred by the *ex post facto* clause of the Constitution.[2]

■ The Supreme Court ruled in *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), that the *ex post facto* clause precluded the application of a Florida sentencing guideline amendment that was enacted after the date of defendant's offense and increased the range of imprisonment. The United States Court of Appeals for the Third Circuit has also indicated that the *ex post facto* clause of the Constitution prohibits the use of amendments where those amendments cause the defendant's offense levels (and resulting punishment) to be increased. *United States v. McAllister*, 927 F.2d 136, 138 n. 2 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991). The proper test for an *ex post facto* clause violation is whether the *overall* punishment for an offense is increased after the fact. *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Where the sentencing commission amends commentary or application notes to a guideline section and seeks merely to clarify the operation of the guidelines and/or to correct typographical errors, the *ex post facto* clause of the Constitution does not bar the use of such revised commentary. *United States v. Thompson*, 944 F.2d 1331, 1347 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); *United States v. Aguilera–Zapata*, 901 F.2d 1209, 1213 (5th Cir. 1990).

2. After amending the above provision of the guidelines, the commission noted:
... In addition, the definition of related cases in Application Note 3 in the commentary to § 4A1.2 is amended to provide that cases separated by an intervening arrest for one of the offenses are not treated as related cases. **The effective date of this amendment is November 1, 1991.**
*United States Sentencing Commission Guidelines Manual* Appendix C (1992) at 209.

42

In the addendum to the presentence report, the probation office argues that defendant's reliance on Application Note 3 is misplaced because Application Note 11 to U.S.S.G. § 4A1.2 establishes that the defendant's prior burglary convictions are to be considered separately for criminal history purposes. That application note provides: "... If, however, at the time of revocation another sentence was imposed for a new criminal conviction, that sentence would be computed separately from the sentence imposed for the revocation." U.S.S.G. § 4A1.2 comment Application Note 11.[3] The probation office argues that the cases are not related simply because the defendant's sentence on his 1980 burglary conviction was served concurrently with the probation revocation sentence imposed for the 1979 burglaries. In support, the probation office further notes that the 1979 burglaries had been adjudicated when the 1980 burglary was committed and the sentences were imposed by different judges on different dates.

The issue raised by the parties' submissions is whether there is an inherent conflict between Application Note 3 and 11 to U.S.S.G. § 4A1.2. The Third Circuit has not considered this issue. The Circuits that have considered this issue have concluded that Application Note 11, being the more specific of the two, governs. *See United States v. Villarreal,* 960 F.2d 117, 119–21 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 166, 121 L.Ed.2d 114 (1992) (discussing issue and analyzing cases). Application Note 11 makes clear that the sentence for an underlying conviction and the sentence imposed upon revocation of probation are considered a single sentence and conviction because any additional time imposed for the revocation is merged with the terms of the original sentence; where, however, a sentence is imposed for revocation of probation on the basis of a conviction for a new substantive offense, the sentence for the new conviction is computed separately from the sentence imposed for the revocation of probation. In the latter case, Application Note 3 does not apply.

*United States v. Palmer,* 946 F.2d 97, 99 (9th Cir.1991).

A sentence is not the equivalent of the period of incarceration served. *United States v. Castro Perpia,* 932 F.2d 364, 365 (5th Cir.1991). The fact that the sentences for revocation and the new conviction were made to run concurrently is not dispositive in determining whether the cases should be considered related under Application Note 3. *See United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990) (action taken by the sentencing court at a parole revocation does not change the underlying sentences' separate and independent nature); *United States v. Villarreal,* 960 F.2d 117, 119 (10th Cir.1992) (mere fact that concurrent sentences were given for revocation and separate offense does not convert the separate convictions into related cases under Application Note 3; the offenses must be factually "related" before Application Note 3 applies); *United States v. Flores,* 875 F.2d 1110, 1114 (5th Cir.1989) ("simply because two convictions have concurrent sentences does not mean that crimes are 'related' under Part A"). The commission's revisions to Application Note 3 on November 1, 1991, further support the determination that Application Note 11 governs when a revocation occurs based upon a new and separate conviction. *Cf. Villarreal,* 960 F.2d at 120–21.

The court finds that Application Note 11 governs. The defendant has two separately calculated burglary convictions under either the 1990 or 1992 Guidelines. There has been no increase in punishment after the fact. The defendant's criminal history meets the linguistic definition of the career offender provisions of U.S.S.G. § 4B1.1.

## II.

The defendant argues that the facts and circumstances of this case justify a downward departure under either U.S.S.G. § 4A1.3 or § 5K2.0. The court agrees that a § 4A1.3 departure is warranted.

**3.** Application Note 11 has not been amended and was an integral part of the guidelines at the time

of defendant's offense of conviction.

The career offender enhancements found in U.S.S.G. § 4B1.1 implement a congressional directive that career offenders be sentenced at or near the statutory maximum. 28 U.S.C. § 994(h). The purpose of this mandate is to discourage recidivism by assuring "harsh treatment" for "violent or drug-related felony recidivism." *United States v. Richardson,* 923 F.2d 13, 16 (2d Cir.1991). The "career criminal" section of the statute was sponsored by Senator Kennedy, who noted:

> It is well documented that a relatively small number of repeat offenders are responsible for the bulk of the *violent* crime on our streets.... Career criminals must be on notice that their chronic *violence* will be punished by maximum prison sentences for their offenses without parole.

128 Cong.Rec. 26, 517–18 (1982) (emphasis added). While these comments suggest Congress was truly concerned about recidivism, "they also point out that violent crime is a primary concern." *United States v. Lawrence,* 916 F.2d 553 (9th Cir.1990). In delivering this mandate to the Sentencing Commission, Congress attempted to assure a "consistent and rational implementation." S.Rep. No. 225, at 175, *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3358. A "rational implementation" of the career offender provision within the integrated Sentencing Guidelines must by necessity recognize a sentencing court's limited discretionary authority to depart under appropriate circumstances.

It is important to note that departures are an important part of the integrated structure of the guidelines. *United States v. Rivera,* 994 F.2d 942, 948–50 (1st Cir.1993) (analyzing encouraged departures, discouraged departures and forbidden departures within framework of the guidelines). In general, the court is to "impose a sentence sufficient, but not greater than necessary, to" (1) reflect the seriousness of the offense, promote respect for the law and provide just punishment; (2) afford adequate deterrence; (3) protect the public from further crimes of the defendant; (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (5)

to avoid unwarranted sentence disparities among defendants with similar records who are guilty of similar conduct. 18 U.S.C. § 3553(a). Where "the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines," a sentence different from that described by the guidelines may be appropriate. 18 U.S.C. § 3553(b). Likewise, where the defendant's raw criminal history computation significantly overrepresents or underrepresents the seriousness of defendant's prior criminal conduct, § 4A1.3 authorizes a court to exercise its limited discretion to depart.

It is recognized in the guidelines that a "sentencing system tailored to fit every conceivable wrinkle of each case would quickly become unworkable and seriously compromise the certainty of punishment and its deterrent effect." U.S.S.G. Ch. 1, Pt. A, intro. The Sentencing Commission describes the guidelines as "carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *Id.* "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* Thus, "viewed as a whole, the authority to depart provides a 'sensible flexibility' to insure that atypical cases are not shoehorned into a Guidelines range that is formulated only for typical cases." *United States v. Rogers,* 972 F.2d 489, 493 (2d Cir.1992).

The Third Circuit recently reiterated the importance of departures under the Guidelines. In *United States v. Gaskill,* 991 F.2d 82 (3d Cir.1993), the court remanded after concluding that the district court erred in believing it lacked authority to depart where the defendant had extraordinary family responsibilities in caring for his mentally ill wife. *Id.* at 86. The court noted:

> It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some respects, the rigidity of the Guidelines themselves. District Judges, therefore, need

not shrink from utilizing departures when the opportunity presents itself and when the circumstances require such action to bring about a fair and reasonable sentence. In *United States v. Lieberman*, 971 F.2d 989, 999 n. 10 (3d Cir.1992), we noted that "an impressive array of commentators has recently emphasized the importance of the flexibility and discretion possessed by the district courts in using their departure power to arrive at sentences that are consistent with the purposes underlying the Sentencing Reform Act."

*Id.* at 86.

The defendant argues that this court should exercise its discretion based upon factors which the Third Circuit recently recognized as providing the basis for a discretionary departure from the Guidelines' career offender enhancements. In *United States v. Shoupe*, 988 F.2d 440 (3d Cir.1993) (Becker, J.), the Third Circuit considered whether a departure under § 4A1.3 is subject to the limitations imposed by 18 U.S.C. § 3553(b) and guideline § 5K2.0.[4] Shoupe had pled guilty to one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court determined that Shoupe was a career offender. In sentencing the defendant, the district court concluded that strict application of the guidelines would be irrational in light of several mitigating factors, including Shoupe's age and immaturity at the time of the two prior offenses, the short time span between those prior offenses, his cooperation with authorities and his family responsibilities. The district court departed downward under U.S.S.G. § 5K2.0. The Third Circuit reversed and remanded, holding that each of these factors had been adequately considered by the Commission. *United States v. Shoupe*, 929 F.2d 116 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

On remand, the district court concluded that the Third Circuit's opinion also precluded a downward departure under U.S.S.G. § 4A1.3 and sentenced defendant to the original career offender calculations. On appeal from this sentence, the Third Circuit again reversed and remanded, noting that § 4A1.3 specifically authorizes a sentencing court to consider whether the computed criminal history significantly "underrepresents" or "overrepresents" the seriousness of the defendant's criminal history. The court concluded that this section of the guidelines is equally applicable to career offender calculations.

The court noted that unlike a § 5K2.0 departure which the Commission left unguided, a § 4A1.3 departure is specifically provided for and the courts are instructed to use as a reference the guideline range for a defendant with a higher or lower criminal history category. *See* U.S.S.G. § 4A1.3.[5] The court concluded that "it makes no sense to treat § 4A1.2 as a departure for factors not accounted for in the Guidelines." The Third Circuit opined:

> In guidelines section 4A1.3, the Commission specifically provided district courts with flexibility to adjust the criminal history category calculated through the rigid formulae of § 4A1.1 or § 4B1.1 ... Section 4A1.3 is both structurally and in its purpose unlike § 5K2.0 and 18 U.S.C. § 3553(b), which allow district courts to depart from the sentencing range calculated under the guidelines for mitigating circumstance not adequately considered by the Commission in formulating the Guidelines.
>
>    *   *   *   *   *   *
>
> We hold that as the plain language of section 4A1.3 provides, a district court considering a section 4A1.3 departure may weigh "reliable information [that] indicates that the criminal history category does not adequately reflect the [seriousness] of the defendant's past criminal conduct" ..., including factors which the commission may have otherwise considered in promulgating other provisions of the Guidelines.

*Shoupe*, 988 F.2d at 445, 447.

The Third Circuit emphasized that a "departure" under § 4A1.3 is only justified

---

**4.** This statute and guideline section pertaining to § 5K2.0 departures limit such departures to factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b).

**5.** Likewise, this policy statement references adjustments to base level calculations in appropriate situations. *Id.*

where a guideline calculation of defendant's criminal history "significantly" overrepresents or underrepresents the seriousness of defendant's past conduct and the future threat to society. *Id.* at 447. The Third Circuit remanded for the district court to consider whether Shoupe's age and immaturity at the time of the two prior offenses, the closeness in time between those prior offenses, and the fact that the prior offenses had occurred nearly fourteen years before the sentencing offense would sufficiently support a finding that Shoupe's career offender status "significantly overrepresent[ed] the seriousness of [his] criminal history or the likelihood that [he would] commit further crimes." *Id.*

Other courts also have concluded that similar facts and circumstances provide a basis upon which a sentencing court can exercise its discretion to depart from the career offender calculations. In *United States v. Bowser,* 941 F.2d 1019 (10th Cir.1991), the defendant was convicted of two separate sales of crack cocaine to an undercover agent (2.7 grams and 6.6 grams). *Id.* at 1021. The defendant had two prior convictions for aggravated robbery, which incidents occurred when defendant was twenty and within a couple months of each other. The defendant had received concurrent sentences for those offenses. *Id.* at 1023. The district court concluded that career offender status overrepresented the defendant's criminal history and departed downward on the basis of defendant's age at the time of the prior offenses, the proximity in time between those two offenses, the length of time between those prior offenses and the offense of conviction and the fact that the defendant received concurrent sentences for the prior offenses.[6] The Tenth Circuit affirmed the district court's downward departure on these facts and concluded that "this unique combination of factors in defendant's criminal history was not considered sufficiently by the Sentencing Commission to justify rigid application of the career offender criminal history categorization." *Id.* at 1025.

In *United States v. Senior,* 935 F.2d 149 (8th Cir.1991) (Arnold, J.), the Eighth Circuit reviewed the district court's determination that career criminal status overrepresented the seriousness of defendant's past criminal history. The defendant had been convicted of conspiracy to distribute cocaine base (10.-774 grams) and possession with intent to distribute. The defendant had been convicted of robbing three Pizza Huts at the age of twenty and had received concurrent sentences for the robberies. At age twenty-four, the defendant had been convicted of two offenses for sales of controlled substances. The defendant was twenty-seven at the time of the offense of conviction. *Id.* at 150. The career offender calculations called for a sentence in the range of 292–365 months. The district court departed from the guideline range and imposed the statutory minimum sentence of ten years. *Id.* at 151. Upon review, Judge Arnold opined:

> We think the District Court correctly held that the overstatement of the seriousness of Senior's criminal history was a circumstance unusual enough to warrant departure. *See [U.S. v.] Brown,* 903 F.2d [540] at 544–45. The Court considered the historical facts of Senior's criminal career, including his age when he committed the offenses, the proximity in time of the robberies and of the drug offenses, and the state's assessment of the seriousness of Senior's crimes as reflected by the state court's handling of sentencing and by the length of time Senior actually served. It was permissible for the District Court to determine that these facts warranted departure.

*Id.* at 151. The court affirmed the district court's departure from the enhancements imposed by career offender status.

The Eighth Circuit also affirmed the district court's departure from career offender status in *United States v. Smith,* 909 F.2d 1164 (8th Cir.1990) (Arnold, J.). In *Smith,* the defendant had been convicted of several offenses growing out of a conspiracy to distribute cocaine. The defendant was convict-

---

**6.** The district court actually departed pursuant to § 5K2.0, but repeated reference was made to the fact that the career criminal enhancements sig-nificantly overrepresented the seriousness of defendant's prior criminal conduct.

ed of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and traveling in interstate commerce with intent to facilitate the drug conspiracy in violation of 18 U.S.C. §§ 1952(a)(2) and (a)(3). The defendant previously had been convicted of burglary which involved the stealing of some personal property from a house and then taking the homeowner's car for a joy ride. The total loss from this crime was around $1,000.00. The defendant also had been convicted of a drug conspiracy which involved the selling of ten hits of LSD to an undercover agent on two separate occasions. The sale price each time was $40.00. *Id.* at 1168–69. Smith had been placed on probation for both the burglary and the drug conspiracy charges. He had spent 8 months in a residential correction facility undergoing treatment for chemical dependency. The circuit court noted that although these prior crimes were serious, the facts surrounding them revealed that each incident was "a somewhat small-time offense." *Id.* at 1169. In upholding the district court's departure from the career offender calculations, the court noted that the two prior crimes had occurred within about a two-month period. The defendant had just turned nineteen years old at that time. The court concluded:

> The relatively minor nature of Smith's crimes, the briefness of his career, and his age at the time the crimes were committed make this an unusual case. The factors which make the appellant a career offender are only barely present. The circumstances behind those factors—the details of Smith's criminal career—justify a departure.

*Id.* at 1169–70. The court concluded that the district court's downward departure from the career offender calculations was warranted and reasonable.

Finally, in *United States v. Lawrence,* 916 F.2d 553 (9th Cir.1990), the district court had departed downward to the sentence imposed by the guidelines without the enhancements added by career offender status. The defendant had pled guilty to possession of over 100 marijuana plants with intent to distribute.

The plants were found in his car. He also had 4,000 marijuana plants at this house. The defendant had two prior state convictions. He had pled guilty to one count of possession of a controlled substance with attempt to deliver and had received five years probation for that violation. Two years thereafter, he pled guilty to two counts of possession of marijuana with intent to manufacture or deliver and had received six months in county jail and five years probation for that violation. The government sought to have the defendant sentenced as a career criminal. That calculation required the defendant to be sentenced to a term of 12.6 to 15.6 years. The district judge departed based in part on testimony from a psychiatrist that the likelihood of recidivism was low and on the fact that the prior criminal record revealed that defendant's violations were not violent or anti-social. *Id.* at 553–54. Concluding that the career offender status overrepresented the defendant's criminal history, the Ninth Circuit affirmed the district court's downward departure. *Id.* at 555. The defendant received a sentence of 30 months imprisonment and three years supervised release. *Id.* at 554. *See also United States v. Nichols,* 740 F.Supp. 1332 (N.D.Ill. 1990) (based upon defendant's conviction for less than one gram of cocaine and a close review of defendant's criminal record which revealed no actual violence, downward departure from career offender calculations to statutory minimum sentence applicable was warranted).

■ The instant situation is very similar to the pertinent facts in *Shoupe.* Here, defendant's two prior burglary convictions occurred in 1979 and 1980. At that time defendant was a teenager. All three burglary indictments were based upon conduct that occurred over the time span of approximately one and a half years and evidence a factually related pattern of behavior. The state judges treated the crimes as related and imposed a sentence of 9 to 23 months for all burglary offenses. This short-lived spree of burglaries was clearly a small-time operation. No actual physical violence or weapon was involved. The burglary convictions occurred approximately thirteen to fourteen years ago and ten to eleven years before the offense of

conviction. Since that time, defendant has had misdemeanor convictions for possession of controlled substances, criminal mischief and obstructing traffic.[7] While the defendant has been less than a model citizen since his teenage convictions for burglary, it is noted that defendant's felony career was relatively short-lived, did not involve actual physical violence or weapons and evidenced a common course of conduct which apparently has not been repeated in the subsequent decade.

■ Defendant also requests that the court consider his prospects for a full recovery from his chemical dependency in evaluating the future threat he will present to society. Defendant was engaged in rehabilitation programs prior to incarceration, has taken advantage of the drug programs available to him while serving his recent state sentence and has submitted an expert's analysis, from a renowned psychologist in the field of substance abuse, which suggests that defendant has excellent prospects for rehabilitation and leading a drug-free life after incarceration.[8]

■ Drug addiction is generally not a reason to impose a sentence below the guidelines' recommendation. *See* U.S.S.G. § 5H1.4. Similarly, the fact that incarceration would interrupt a defendant's drug reha-

bilitation efforts is an inappropriate basis for departure. *United States v. Parr*, 916 F.2d 129, 133 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). The defendant argues that *Parr* does not preclude the court from considering his pre-trial drug rehabilitation efforts, his attempt to take full advantage of the state programs available to him in the last 23 months and the prospects of his leading a drug free life after incarceration for the purposes of determining whether a § 4A1.3 departure is appropriate. Defendant cites *United States v. Maier*, 777 F.Supp. 293 (S.D.N.Y.1991), *aff'd* 975 F.2d 944 (2d Cir.1992) (discussing import of defendant's heroin addiction in relation to recidivism and noting the vast number of studies published since the promulgation of the guidelines evidencing the success of drug treatment programs) and *United States v. Collins*, 915 F.2d 618 (11th Cir.1990) (district court can consider factors which tend to diminish likelihood that a defendant will commit future crimes) in support of this argument. While *Parr* does not literally preclude consideration of defendant's post-arrest efforts to overcome his addiction in relation to a § 4A1.3 inquiry as to whether defendant is likely to commit further crimes, a fair reading of *Parr* suggests that such efforts are to be given at best modest weight in the analysis.

---

**7.** Defendant's prior convictions for controlled substances involved an attempt to smuggle eight pills into a Public Safety Building when he was being held on the burglary charges. Defendant pled guilty to this charge and received one year probation. At the age of 23, defendant offered to sell a $5.00 bag of marijuana to a detective. Defendant pled guilty to simple possession of marijuana and received a sentence of one year of probation. Defendant was sentenced to 90 days of incarceration for the criminal mischief offense and was sentenced to probation for the other offense. Thus, prior to defendant's incarceration on the related state charges in July 1991, defendant had been incarcerated for a total of approximately 15 months.

**8.** Defendant submitted a psychiatric evaluation regarding his ten year history of severe opiate dependency. The evaluation was authored by Dr. Ralph E. Tarter, Ph.D., a licensed clinical psychologist. Dr. Tarter concluded that on a scale of 1 to 10, the defendant's drug addiction would qualify for a score of 10. He noted that "his use pattern was compulsively driven and

marked by a physical dependency, consisting of polysubstance abuse including prescription, alcohol and street drugs, and at times consisting of chemicals that were potentially dangerous to him as for example his use of halidol. For the period of time during his active addiction, he was driven by the need to obtain substances to fend off the punishing effects of physiological withdrawal. This had substantial effects on his capacity to regulate his behavior.... Mr. Taylor's incarceration has had the effect of allowing him to undergo acute as well as protracted withdrawal from addictive drugs. During this time, he has restructured his values and goals in life, and expressed a strong desire to lead a productive life." Dr. Tarter concluded that the defendant should be considered a good candidate for rehabilitation. While defendant acknowledges that the above information is of limited use in determining whether departure is warranted under § 5K2.0, defendant argues that it is relevant under § 4A1.3 because it suggests that he can continue to defeat the circumstances most logically related to his propensity to become involved in criminal activity.

While the defendant's drug rehabilitation efforts are not a significant factor which justifies a downward departure from the enhancements imposed by career offender status, the other factors advanced by the defendant have been considered by other courts to be appropriate factors which make a case atypical. Furthermore, Dr. Tarter's assessment regarding the defendant's ability to lead a life free from chemical dependency after incarceration will be taken into account because it reflects upon the likelihood of defendant committing further crimes.

The court finds that after considering the defendant's age and maturity at the time of the burglary convictions, the short time span between the past convictions of burglary and their factually related pattern, the time span between the burglary convictions and the instant conduct, defendant's actual conduct in all past convictions, the lack of any physical violence or weapons involved in any of defendant's past convictions, the state sentencing judges' assessment of defendant's prior burglary convictions and the concomitant concurrent sentences imposed, and Dr. Tarter's assessment of the defendant's likelihood of living a drug free life after release from incarceration, it is clear that the career offender status ascribed to the defendant significantly overrepresents the seriousness of his criminal history and the likelihood that he will commit further crimes. Thus, the court will depart downward pursuant to U.S.S.G. § 4A1.3.

### III.

■ Concluding that a § 4A1.3 departure is warranted is not the end of the inquiry. A § 4A1.3 departure from the career offender enhancements must be "guided" and analogized to the appropriate sections of the guidelines. *Shoupe,* 988 F.2d at 445 n. 7. "A judge may not say: 'I have decided to depart, so I now throw away the guidelines.'" *United States v. Ferra,* 900 F.2d 1057, 1058 (7th Cir.1990) (Easterbrook, J.); *see also United States v. Brittman,* 750 F.Supp. 388, 393 (E.D.Ark.1990) (any departure must be guided, principled and "ought to make analogy to the mechanics and philosophy of sentencing reflected in the guidelines

themselves"). As previously noted, § 4A1.3 notes that a court should begin its analysis of the appropriate degree of a departure by referring to a higher or lower criminal history category, but also references adjustments to the offense level where necessary to find a guideline range appropriate to the case.

■ In determining the appropriate degree of departure, the facts and circumstances which make the case atypical must be weighed within the mechanics and philosophy of the guidelines so that the result gives due regard to the guidelines and produces a just and reasonable sentence which is in accord with the statutory factors under 18 U.S.C. § 3553. Moving in horizontal increments to reflect the relative seriousness of a defendant's criminal history and moving in vertical increments to reflect the relative seriousness of the offense is the common departure approach. *See United States v. Brittman,* 750 F.Supp. 388, 393 (E.D.Ark.1990). However, the circuits already have implicitly recognized that every departure cannot be shoehorned into this "matrix analogy approach." *Id.* at 394 (noting unusual departure cases).

The career offender enhancements increase the defendant's sentence by adding a significant increase to the defendant's base level offense and by elevating the criminal history calculation to category VI in all cases. A number of courts have determined that the floor of a departure from the career offender enhancements is the statutory minimum sentence applicable or the presumptive guideline calculation without the enhancements. In *United States v. Bowser,* 941 F.2d 1019 (10th Cir.1991), the Tenth Circuit affirmed the district court's departure to the guideline calculations applicable without the enhancements and noted:

The jump into the career offender category was made in one step under U.S.S.G. § 4B1.1. The district court reversed that single step when it reasonably determined . . . that placing defendant in the career offender criminal history category significantly over-represented the seriousness of his criminal history . . . we note that the district court did not depart below [the appropriate calculations] computed for de-

fendant's crime and criminal history without the career offender enhancement.

*Id.* at 1026. *See also United States v. Senior*, 935 F.2d 149, 151 (8th Cir.1991) ("because the District Court based its sentence on the guideline range which would have applied absent the overstatement of Senior's criminal history, the sentence is reasonable...."); *United States v. Lawrence*, 916 F.2d 553, 554–55 (9th Cir.1990) (affirming downward departure to sentence for offense level and criminal history level calculated without enhancements); *United States v. Nichols*, 740 F.Supp. 1332, 1337 (N.D.Ill. 1990) (departing to statutory minimum applicable); *United States v. Garrett*, 712 F.Supp. 1327 (N.D.Ill.1989) (same).

Defendant argues that a number of additional mitigating factors should also be considered in determining the degree of a § 4A1.3 departure.[9] First, defendant notes that the quantity of drugs involved is minimal and his distribution was solely at street level. Second, defendant has served 23 months of a 2 to 5 year state sentence for controlled substance offenses which were similar and related in time to the offense of conviction; the sentencing judge reviewed the same criminal history record except for this state sentence. Third, the record establishes that defendant's recent propensity toward criminal activity with illicit drugs was the result of his severe heroin addiction.

The conduct surrounding the instant offense of conviction is relevant in determining the appropriate degree of a departure. *United States v. Ryan*, 866 F.2d 604 (3d Cir.1989); *Brittman*, 750 F.Supp. at 394. As to the first factor, defendant's statutory maximum sentence is prescribed by a statute which covers sales of heroin up to 99.9 grams. Defendant sold less than one-half of a gram. As the court in *Nichols* noted after concluding that the career offender enhancements overrepresented defendant's past criminal history:

> It is also appropriate to make a downward departure as to the offense level. The offense levels contained in guideline 4B1.1 are guided by Congress's direction to assure that career offenders receive sentences at or near the maximum term authorized.... Congress, however, would not have intended that somebody found guilty of intending to distribute less than one gram of diluted cocaine be sentenced at or near the maximum for intending to distribute nearly 500 grams of cocaine.

*Nichols*, 740 F.Supp. at 1337 (citation and footnote omitted). As in *Nichols*, here the conduct surrounding the offense of conviction is at the lowest end of the realm falling within the statute's purview. Accordingly, this is an appropriate and important factor to consider in determining the degree of departure. Furthermore, an intervening sentence may be considered. *United States v. Collins*, 915 F.2d 618, 621 (11th Cir.1990). *See also* U.S.S.G. § 5G1.3(c), p. 5, application note 3.[10] Finally, the Third Circuit's opinion in *Parr* makes clear that defendant's severe heroin addiction is an inappropriate factor for consideration. Accordingly, only the conduct surrounding defendant's offense of conviction and the intervening state sentence will be additionally taken into consideration.

Here, defendant's initial instant base offense level is determined by U.S.S.G. § 2D1.2(a)(1). This guideline provision directs that the base offense level is 2 plus the offense level from § 2D1.1. Because defendant delivered less than 5 grams of heroin and/or cocaine, § 2D1.1 provides for an offense level of 12. Therefore, § 2D1.2(a)(1) requires a total base offense level of 14. The career offender enhancements are keyed to

**9.** The factors warranting the § 4A1.3 departure already have been articulated. While two of these additional factors also can be said to support the announced departure, it is noted that the additional factors advanced are more probative to the appropriate degree of departure.

**10.** The Sentencing Commission in addressing the vast array of situations where a court may be required to sentence a defendant who is already serving an undischarged sentence specifically contemplated situations arising where a departure is warranted. Application note 3 to § 5G1.2(c), p.s., while noting that departure is not required under such circumstances, specifically noted that a departure may be warranted when the court attempts to fashion a sentence "necessary to achieve a reasonable incremental punishment for the instant offense." *See* U.S.S.G. §§ 5G1.3(a), (c), application note 3.

the statutory maximum period of incarceration. Because defendant pled guilty to a violation of 21 U.S.C. § 845a (1990) (now codified at 21 U.S.C. § 860), defendant's statutory maximum sentence is 40 years. This statutory maximum requires a 20 level increase in the offense level, making the adjusted offense level 34.

Under U.S.S.G. § 4A1.1, the defendant's prior criminal history points add up to 10 without counting the recent state court conviction and to 13 when the recent state court conviction is counted. Thus, when mechanically applied, the guidelines require a criminal history of VI (without the career offender enhancement).[11]

It is clear from a thorough review of the entire record that a base level departure is warranted. The "significant overrepresentation" here requires a significant departure. An adjustment to the criminal history category alone does not produce a range appropriate to the case. Because the enhancements overrepresent the seriousness of defendant's criminal history and the seriousness of defendant's offense of conviction, the court will depart to a base level of 20 and a criminal history category of V. This adds a six level increase to defendant's sentence as computed without the enhancements, which adequately considers Congress' and the Sentencing Commission's determination that two convictions of burglary are to require an enhanced sentence, while avoiding a significant overrepresentation of defendant's past criminal

history and the seriousness of the offense of conviction.[12] Because defendant timely accepted responsibility for his actions, a three level reduction will be included pursuant to § 3E1.1(b)(2), bringing defendant's guideline sentencing range to 46 to 57 months. Taking into account the guidance provided by policy statement in § 5G1.3(c) and application note 3 thereto, the defendant's sentence is to run consecutive to the 24 months already served on the state charges. As a special condition of the mandatory six years of supervised release, to which defendant also must be sentenced, the defendant will be required to participate in continual drug counseling during this period.

The above calculations comport with the general directives specified in 18 U.S.C. § 3553(b). Defendant will serve at least close to six years of incarceration for his street level drug dealing of 1989 and 1990. The sentence imposed is thus adequate to reflect the seriousness of the offense and to promote respect for the law. It also provides adequate deterrence and protects the public from further crimes. Continuing drug counseling during the following six years of supervised release will assist in providing the defendant with needed correctional treatment in an effective manner and provides a six year safety valve to assure that defendant does not revert to the conduct which has brought him before the court. Accordingly, defendant will be sentenced as indicated above.

**11.** The defendant argues that it is improper for the court to add three criminal history points for the state conviction under § 4A1.1. Defendant's argument has merit in the following regard. The Sentencing Commission addressed the imposition of a sentence on a defendant subject to an undischarged term of imprisonment in § 5G1.3. Sections 5G1.3(a) and (c) and application note 3 thereto direct the court to fashion a sentence which achieves a reasonable incremental punishment for the instant offense. The court is directed to approximate the total guideline sentence that would be applicable had the state offenses "been federal offenses for which sentences were being imposed at the same time." Because of the small quantities of narcotics involved in both prosecutions, it is noted that defendant's base level would most likely remain the same, but the defendant would have been in history category V without the 3 points added for the state conviction. Under this approach, defendant's base lev-

el would remain at 14 and his history category would be V, directing a total guideline sentence for the state and instant offenses within the range of 27 to 33 months (after a two-level reduction for acceptance of responsibility).

**12.** Where a criminal history category VI is utilized, the same guideline range is reached by a 5 level increase to the base offense level. The various ranges between a straightforward application of the guidelines and the range noted above have been considered). *See United States v. Hickman*, 991 F.2d 1110 (3d Cir.1993). Here, the criminal history calculations overrepresent both the defendant's criminal history and the severity of the offense of conviction to a degree that is not only significant, but extreme. Accordingly, the court concludes that the range of 46 to 57 months reflects the "guidelines range appropriate to the case."

This court's memorandum order and tentative findings and rulings will follow.